

# OPINION

No. 04-07-00702-CV

**TEXAS DEPARTMENT OF PUBLIC SAFETY**,
Appellant

v.

Nelson Aguirre **GONZALES**,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 327218
Honorable Timothy F. Johnson, Judge Presiding

**OPINION ON APPELLANT'S MOTION FOR REHEARING**

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Alma L. López, Chief Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice

Delivered and Filed:   October 22, 2008

AFFIRMED

The motion for rehearing filed by appellant, Texas Department of Public Safety, is denied.

This court's opinion and judgment dated August 20, 2008, are withdrawn, and this opinion and

judgment are substituted.

The Texas Department of Public Safety (DPS) appeals from the trial court's judgment

reversing an administrative order that suspended Nelson Aguirre Gonzales's driver's license for

refusing to provide a breath specimen.  On appeal, DPS contends that the trial court erred in

reversing the administrative order because a clerical error in the administrative order did not require reversal, and all other predicates for the license suspension were supported by substantial evidence. Because we disagree that all predicates for the license suspension were supported by substantial evidence, we affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4:00 a.m. on January 21, 2007, officer John Pagola of the San Antonio Police Department observed Gonzales driving 45 miles per hour in a 65 miles per hour zone on U.S. Highway 281. Pagola stopped Gonzales's vehicle, and after observing signs of intoxication, asked Gonzales to perform field sobriety tests. After determining that Gonzales failed the field sobriety tests, Pagola arrested Gonzales and requested a breath specimen for alcohol concentration testing. Gonzales refused, and DPS subsequently suspended his driver's license.

Gonzales requested an administrative hearing regarding the suspension. Shortly after the hearing, the administrative law judge (ALJ) issued an order upholding the suspension of Gonzales's driver's license. The ALJ's order recited that the offense occurred on January 1, 2007, not January 21, 2007 as the evidence at the administrative hearing established. Gonzales then appealed the ALJ's decision to the county court at law, complaining that the order failed to state the correct date on which reasonable suspicion to stop and probable cause to arrest existed, and that the evidence did not support the ALJ's finding that there was reasonable suspicion to stop Gonzales's vehicle. The county court signed a general order reversing the judgment of the ALJ and ordered DPS to rescind the suspension of Gonzales's license. On appeal to this court, DPS contends that 1) the ALJ's clerical error did not require reversal by the trial court because Gonzales's substantial rights were not affected, and 2) reasonable suspicion existed to conduct the traffic stop of Gonzales.

**STANDARD OF REVIEW**

A reviewing court applies the substantial evidence standard when reviewing an administrative license suspension. TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2000); *Mireles v. Tex. Dep't of Pub. Safety,* 9 S.W.3d 128, 131 (Tex. 1999). This standard of review is deferential. *See City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 243 n.1 (Tex. App.—Fort Worth 2007, pet. denied) (reviewing court should not overturn a decision of an administrative agency unless it is "illegal, arbitrary or capricious; that is, that it is not reasonably supported by substantial evidence"). The court may not substitute its judgment as to the weight of the evidence for that of the ALJ. *Mireles*, 9 S.W.3d at 131. Under this standard, there is a presumption that substantial evidence supports the administrative findings, inferences, conclusions and decisions, and the complaining party has the burden of proving otherwise. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994). The issue for the reviewing court is not whether the ALJ's decision was correct, but rather whether there is some reasonable basis in the record for the administrative decision. *Id*. If there is more than a scintilla of evidence supporting the ALJ's findings, the reviewing court must affirm the decision. *Mireles,* 9 S.W.3d at 131 (noting that an administrative decision may be sustained even if the evidence preponderates against it). A court may reverse an administrative decision only if it finds the appellant's substantial rights have been impaired because the ALJ's findings are not supported by the record in its entirety. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E).

We review the trial court's substantial evidence review *de novo. Tex. Dep't of Pub. Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.). Substantial evidence exists if reasonable minds could have reached the same conclusion. *Tex. Dep't of Pub. Safety v.*

*Fecci,* 989 S.W.2d 135, 139 (Tex. App.—San Antonio 1999, pet. denied). In determining whether the ALJ's decision was supported by substantial evidence, this court is governed by the following principles: 1) the trial court will hear and consider evidence to determine whether reasonable support for the ALJ's order exists, but the ALJ remains the primary fact-finding body, and the question for the trial court is strictly one of law; 2) the trial court may not substitute its judgment for that of the ALJ on controverted issues of fact; 3) if the ALJ heard substantial evidence that would support either an affirmative or negative finding, the trial court must allow the ALJ's order to stand, even if the court would have differed with the result; 4) the trial court may not set aside the ALJ's ruling merely because there was conflicting or disputed testimony; and 5) the trial court is concerned only with the reasonableness of the ALJ's order not its correctness. *Id.*

## ANALYSIS

### *Clerical Error*

DPS first argues that the trial court erred when it implicitly ruled[1] that the ALJ's clerical error necessitated the reversal of Gonzales's license suspension. DPS alleged in its pleadings, and the evidence presented at the administrative hearing showed, that the incident occurred on January 21, 2007. DPS maintains that the clerical error did not affect Gonzales's substantial rights, and therefore the correct action would have been to modify the ALJ's decision. *See* TEX. GOV'T CODE ANN. § 2001.174(2) (stating that administrative decisions shall only be reversed when the appellant's

---

[1] DPS contends that the trial court's docket sheet entry noting, "ALJ decision set aside – no evidence of anything on Jan. 1, 07," may be used to explain the trial court's state of mind. *See N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977) (orig. proceeding) (noting that docket sheet entry may supply facts in certain situations so long as the entry does not contradict a final order). This use, however, has been limited to correcting clerical errors in judgments or orders or determining the meaning of ambiguous words used in a judgment or order. *Energo Int'l Corp v. Modern Indus. Heating, Inc.*, 722 S.W.2d 149, 151 n.2 (Tex. App.—Dallas 1986, no writ) (holding that a docket sheet entry ordinarily forms no part of the record that may be considered because it is a memorandum made for the trial court and clerk's convenience). Here, we decline to consider the docket sheet entry because the trial court's order was unambiguous.

substantial rights have been prejudiced); *Blankenbeker v. Tex. Dep't of Pub. Safety*, 990 S.W.2d 813, 819 (Tex. App.—Austin 1999, pet. denied) (rendering judgment modifying administrative decision to reflect correct offense date where undisputed proof of offense date existed). The parties agree and the record undisputedly reflects that Gonzales's actions and the resulting arrest occurred on January 21, 2007, not January 1, 2007. We agree with DPS that the clerical error did not impact Gonzales's substantial rights. *See* TEX. GOV'T CODE ANN. § 2001.174(2); *see also Goldstein v. Tex. Dep't of Pub. Safety*, No. 04-06-00142-CV, 2006 WL 2871544, at *2 (Tex. App.—San Antonio Oct. 11, 2006, no pet.) (mem. op.) (holding clerical error in ALJ order was not material and did not impair appellant's substantial rights). Accordingly, the ALJ's order was not invalid for this reason, but that does not complete our analysis. *See Tex. Dep't of Pub. Safety v. Stacy*, 954 S.W.2d 80, 82 (Tex. App.—San Antonio 1997, no writ) (noting that under the substantial evidence rule, we determine whether the ALJ's findings are supported by substantial evidence or whether the order is invalid for some other reason).

### *Reasonable Suspicion to Stop*

DPS next contends that the trial court erred in reversing the administrative order because all other predicates required to suspend Gonzales's driver's license were supported by substantial evidence. At a license suspension hearing, DPS bears the burden of proving: 1) reasonable suspicion or probable cause existed to stop or arrest the person; 2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; 3) the person was placed under arrest by the officer and subsequently requested to submit to a breath or blood test; and 4) the person refused to submit to the breath or blood specimen. TEX. TRANSP. CODE ANN. § 724.042 (Vernon Supp. 2008). The parties agree that substantial evidence supports the last three

requirements; therefore, we focus on whether substantial evidence supports the ALJ's finding that reasonable suspicion existed to stop Gonzales's vehicle.

An officer conducts a lawful stop when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.*; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Under this standard, we look to whether an objective basis for the stop existed while considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492-93. An officer may stop a driver if he has reasonable suspicion that a traffic violation was in progress or had been committed. *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.).

At the administrative hearing, the sole witness, Officer Pagola, testified that he stopped Gonzales's vehicle because Gonzales was traveling 45 miles per hour in a 65 miles per hour zone, which Pagola "considered impeding traffic." Pagola stated that on the Sunday morning in question, it was "foggy and drizzly; it was wet asphalt." Pagola acknowledged that such conditions were "not the safest" and that a reasonable, prudent driver should adjust his speed accordingly when driving under those conditions. Pagola could not recall the amount of traffic on the highway at the time he stopped Gonzales, and therefore could not recall whether Gonzales was actually impeding traffic. Pagola testified that there was no other basis for stopping Gonzales aside from the fact that he was driving 45 miles per hour in a 65 miles per hour zone; however, the police report which was admitted as evidence states that Pagola also observed Gonzales drifting within his lane of travel.

On appeal, DPS argues that Pagola had reasonable suspicion to stop Gonzales's vehicle because Gonzales violated an ordinance of the City of San Antonio by driving 20 miles per hour below the posted speed limit. Section 19-133 of the municipal code provides that "[t]he minimum, reasonable, safe and prudent speed limit for the interstate highways and expressways within the city limits are hereby declared to be uniformly ten (10) miles per hour less than the maximum reasonable, safe and prudent speed limit for said highways." SAN ANTONIO, TEX., CODE OF ORDINANCES 19-133 (2008). At the hearing, however, Pagola testified that he was not familiar with this ordinance[2], and repeatedly asserted that he stopped Gonzales's vehicle for "impeding traffic." The statute relevant to the issue of impeding traffic is section 545.363(a) of the Texas Transportation Code, entitled "Minimum Speed Regulations." It states that "[a]n operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." TEX. TRANSP. CODE ANN. § 545.363(a) (Vernon 1999). Texas courts interpreting section 545.363(a) have held that slow driving, in and of itself, is not a violation of the statute; a violation only occurs when the normal and reasonable movement of traffic is impeded. *See, e.g., Davy v. State*, 67 S.W.3d 382, 392-93 (Tex. App.—Waco 2001, no pet.) (holding no violation of minimum-speed regulations where there was little or no traffic to impede); *Richardson v. State*, 39 S.W.3d 634, 639 (Tex. App.—Amarillo 2000, no pet.) (holding evidence insufficient to support reasonable suspicion that defendant was impeding traffic where there was little or no traffic on road for defendant to impede, and there was evidence defendant was only traveling 10 miles per hour under speed limit, which officer stated would not have posed a safety

---

[2] DPS argues that although Pagola was not familiar with the city ordinance, a reasonable officer in the City of San Antonio would have been, thus making the traffic stop objectively reasonable. Even assuming Pagola was aware of the city ordinance, we disagree that Pagola articulated specific facts leading him to suspect that Gonzales violated the city ordinance, as discussed *infra*.

problem); *U.S. v. Coronado*, 480 F.Supp.2d 923, 928 (W.D. Tex. 2007) (holding government failed to show reasonable suspicion that driver had impeded traffic where there was no evidence of how long officer observed backup of cars behind vehicle, and no evidence that vehicle was impeding normal and reasonable movement of traffic). Cases holding that a violation of Texas's minimum-speed limit law occurred have included testimony that traffic was backed up due to the defendant's slow driving or that the defendant's vehicle was completely stopped in a lane of traffic. *See, e.g.*, *Green v. State*, 773 S.W.2d 816, 819 (Tex. App.—San Antonio 1989, no pet.) (holding probable cause existed to stop defendant for impeding traffic where vehicle was completely stopped in lane of traffic); *Moreno v. State*, 124 S.W.3d 339, 347 (Tex. App.—Corpus Christi 2003, no pet.) (fact that defendant was driving 25 miles per hour in 45 miles per hour zone provided officer with probable cause to stop vehicle for impeding traffic where officer also observed traffic backed up behind defendant's vehicle due to slow driving and heavy amount of traffic).

In applying the substantial evidence standard, we review the record before us for evidence of whether Gonzales drove "so slowly as to impede the normal and reasonable movement of traffic," thus justifying the traffic stop. *See* TEX. TRANSP. CODE ANN. § 545.363(a). Here, there was no evidence that the normal and reasonable movement of traffic was impeded by Gonzales's driving. In fact, Pagola testified that he could not recall the traffic conditions when Gonzales was stopped. An officer's conclusory statement that the law has been violated is not sufficient to prove reasonable suspicion. *See Ford*, 158 S.W.3d at 493. Pagola was required to provide "specific, articulable facts" from which a reviewing court could assess whether he reasonably concluded that Gonzales actually was, had been, or soon would be engaged in criminal activity. *Id.* Without more, Pagola's mere conclusory statement that Gonzales was impeding traffic is insufficient to support a reasonable

suspicion that Gonzales was committing a traffic violation. Nor can we conclude that the stop was justified on the basis that Gonzales drifted within his own lane of travel. *See State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App.—Waco 1998, pet. ref'd) (holding that an investigatory stop for weaving in one's own lane of traffic is only justified when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity). Here, although Pagola contended that the rate of speed at which Gonzales's vehicle was traveling was unreasonable, he gave no testimony that Gonzales's driving was unsafe. Furthermore, Pagola did not state that he suspected that Gonzales was intoxicated at the time he initiated the stop. *Cf. Walker v. State,* No. 2-04-336-CR, 2006 WL 349704, at \*5 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.) (mem. op.) (not designated for publication) (holding traffic stop based on weaving within own lane justified where officer articulated his suspicion that driver might be intoxicated).

Finally, we cannot conclude as a matter of law that the stop was justified on the basis that Gonzales violated the city ordinance. The city ordinance is violated when a driver travels ten miles per hour less than the "**maximum reasonable, safe and prudent speed limit**." SAN ANTONIO, TEX., CODE OF ORDINANCES 19-133 (emphasis added). Pagola stopped Gonzales for driving twenty miles per hour below the posted speed limit. However, driving ten or more miles per hour less than the posted speed limit does not constitute a per se violation of the city ordinance. The city ordinance is not concerned with the posted speed limit, but rather with the "maximum reasonable, safe and prudent speed limit." *Id.* Here, there was no testimony as to what a reasonable speed would have been under the weather conditions present at the time of the stop, which occurred at nearly 4:00 a.m. on a foggy, drizzly Sunday morning. In fact, at the hearing, Pagola agreed that a reasonable, prudent driver should adjust his speed below the posted speed limit when driving in fog and rain. *See* TEX.

TRANSP. CODE ANN. § 545.351(b)(1) (Vernon 1999) ("An operator may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for actual and potential hazards then existing"). Absent evidence of what a maximum reasonable, safe and prudent speed would have been given the conditions at the time of the stop, we do not agree that the arresting officer articulated specific facts on which he could conclude that Gonzales violated or was about to violate the city ordinance. *See Garcia*, 43 S.W.3d at 530.

Taking as true all issues of fact before the ALJ, we do not agree that reasonable minds could conclude that the initial stop was justified. *See Fecci*, 989 S.W.2d at 139 (noting that substantial evidence exists if reasonable minds could have reached the same conclusion). We note that the result in this case only occurs because of the particular facts in the record before us, a record that is devoid of any evidence to support the ALJ's finding that Pagola had an objectively reasonable suspicion that Gonzales was committing or about to commit a traffic violation to justify the stop. Because the stop was improper, DPS did not meet its burden of proving all of the elements required to suspend Gonzales's license and Gonzales's substantial right to retain his driver's license was prejudiced as a result of the ALJ's findings. *See* TEX. TRANSP. CODE ANN. § 724.042; TEX. GOV'T CODE ANN. § 2001.174(2)(E). Accordingly, DPS's second issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice