

## NUMBER 13-12-00163-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**TEXAS DEPARTMENT OF PUBLIC SAFETY,**            **Appellant,**

**v.**

**BIANCA VILLESCAS,**            **Appellee.**

---

### On appeal from the County Court at Law No. 6 of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes Memorandum Opinion by Chief Justice Valdez

Appellant, Texas Department of Public Safety, appeals from a judgment rendered in favor of appellee, Bianca Yvonne Villescas, on a petition for judicial review of the administrative suspension of her driver's license.[1] We reverse and render.

---

[1] Appellee has not filed a brief with this Court.

## I. BACKGROUND

At the administrative hearing, the Department relied on documentary evidence. Counsel for Villescas stated he had no objection to this evidence. The Department offered the sworn report of Trooper Orlando Olivarez, in which Trooper Olivarez stated that, on the day in question, he was travelling northbound on Depot Road when he observed Villescas operating a vehicle that made a right turn onto Borolo Drive without signaling. Based on this traffic violation, Trooper Olivarez stopped Villescas. According to Trooper Olivarez, the stop took place outside the south-side entrance to a gated neighborhood where Villescas resides.

Upon approaching Villescas's vehicle, Trooper Olivarez smelled the strong odor of alcohol emanating from within Villescas's vehicle. Trooper Olivarez asked Villescas to provide her driver's license. She had difficulty finding it and bypassed it several times. After Villescas exited her vehicle, Trooper Olivarez noticed the strong odor of alcohol emitting from Villescas's breath. When questioned, Villescas admitted to drinking at a place called the Cubby Hole.

Trooper Olivarez asked Villescas to perform standardized field sobriety tests, and Villescas consented. Trooper Olivarez conducted three standardized field sobriety tests. Villescas performed poorly on all three, showing multiple signs of intoxication. Based on the results of the field sobriety tests, Trooper Olivarez arrested Villescas. Then, he read the statutory warnings to her and requested that she provide a sample of her breath. She refused.

At the administrative hearing, Villescas relied upon the testimony of Augustine Hernandez, her fiancé, who was travelling in a different vehicle when she was stopped by Trooper Olivarez. Hernandez testified that it was impossible for Villescas to have

2

made a right turn onto Borolo Drive without signaling, as Trooper Olivarez stated in his report, because she was stopped before she reached Borolo Drive. Hernandez testified that Villescas lives on Borolo Drive, which is located wholly inside a gated subdivision known as Ravenswood.

According to Hernandez, Villescas was traveling on Chapin Road when she allegedly made the right turn without signaling. Hernandez testified further that Chapin Road dead-ends at the Ravenswood neighborhood, and it is impossible to make a complete right turn into the neighborhood without stopping at the gated entrance, which requires entry of a security code for access. The road leading into the neighborhood, according to Hernandez, is Ravenswood Road, not Borolo Drive, which is about 50 feet away from the entrance to the neighborhood. Counsel for Villescas argued that it was therefore impossible for Trooper Olivarez to have observed Villescas making a right turn onto Borolo Drive without signaling and therefore Trooper Olivarez had no reasonable suspicion for the traffic stop.

The administrative law judge found that there was reasonable suspicion for the traffic stop and probable cause for the arrest and upheld the suspension of Villescas's license.

Villescas appealed to the county court at law. In her live pleading, Villescas alleged that the decision of the administrative law judge was not supported by substantial evidence and alleged in relevant part the following:

> The stop in this case was based on a purported violation of Tex. Transp. Code, failure to signal turn. However, Respondent/Defendant was driving on a dead end road that ended with a subdivision gated entrance on the right side of the road. Thus, Respondent/Defendant could not make a complete turn without having to stop at the gated entrance.

3

The court held a hearing on the appeal. Villescas argued that it was factually impossible for Trooper Olivarez to have observed her make a right turn onto Borolo Drive without signaling, as he stated in his report, because she had not made it to Borolo Drive when he initiated the stop. Thus, there was no reasonable suspicion for the traffic stop.

The Department argued that there was substantial evidence to support the finding of reasonable suspicion. The Department maintained that Trooper Olivarez's report was factually correct—that there was no mistake about Villescas failing to signal as she turned onto Borolo Drive. The Department asserted, without evidence, that Ravenswood Road is actually Borolo Drive. Thus, Trooper Olivarez had reasonable suspicion to make the stop.

The court reversed the administrative law judge's ruling. This appeal ensued.

## II. ANALYSIS

In two issues, the Department argues that the trial court erred in reversing the administrative law judge's ruling because (1) the trial court improperly reweighed the evidence to reach its conclusion that there was no substantial evidence to support the administrative law judge's finding of reasonable suspicion and (2) there was no valid basis for reversing the suspension.

### A. Applicable Law and Standard of Review

"If a person refuses the request of a peace officer to submit to the taking of a specimen, the department shall . . . suspend the person's license to operate a motor vehicle on a public highway for 180 days." *See* TEX. TRANSP. CODE ANN. § 724.035(a)(1) (West 2011). Upon written request, a hearing must be held by the State Office of Administrative Hearings. *Id.* § 724.041(a) (West 2011). A request for a

4

hearing stays the suspension or denial until the date of the final decision of the administrative law judge. *Id.* § 724.041(c).

The issues at a hearing under this provision are whether (1) a reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and (4) the person refused to submit to the taking of a specimen on request of the officer. *Id.* § 724.042 (West 2011). If the administrative law judge finds in the affirmative on each issue under Section 724.042, the suspension order is sustained. *Id.* § 724.043(a) (West 2011).

Chapter 524 governs an appeal from an action of the department, following an administrative hearing under chapter 724, in suspending or denying the issuance of a license. *Id.* § 724.047 (West 2011). Review on appeal is on the record certified by the State Office of Administrative Hearings with no additional testimony. *Id.* § 524.043(a) (West 2007). The trial court is required to review administrative license suspension decisions under the substantial evidence standard. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. *Id.* The issue for the reviewing court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action. *Id.* Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *Id.* In fact, an administrative decision may be sustained even if the evidence preponderates against it. *Id.*

We review the trial court's decision de novo. *Tex. Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.) ("We review the trial court's substantial evidence review de novo."). "[W]hether there is substantial evidence to support an administrative decision is a question of law, *Montgomery Independent School District. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000), and on questions of law, neither the trial court nor the administrative law judge is entitled to deference on appeal, *e.g.*, *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996)." *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006).

## B.  Discussion

In its first issue, the Department complains that the trial court erred by reweighing conflicting evidence that the administrative law judge resolved in its favor. Specifically, the Department argues that the trial court reached its decision by choosing to believe Hernandez's testimony concerning the location of Borolo Drive, the location of the traffic stop, and the argument of counsel that, based on the foregoing, it was impossible for Trooper Olivarez to have observed the right turn described in his report as the basis for initiating the traffic stop. According to the Department, this was improper because the administrative law judge, acting as the finder of fact, chose to believe Trooper Olivarez's report. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) ("[The fact-finder is] the sole judge[] of the credibility of the witnesses and the weight to be given their testimony. [It] may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary."). We agree with the Department.

In an appeal involving an administrative suspension, the trial court is not called to act as the finder of fact; rather, it must review the record to determine whether the

6

administrative findings on appeal are supported by substantial evidence. *See Mireles*, 9 S.W.3d at 131; *see also Tex. Dep't of Pub. Safety v. Lee*, No. 03-11-00532-CV, 2012 Tex. App. LEXIS 7553, *8 (Tex. App.—Austin Aug. 31, 2012, no pet. h.) (mem. op.) ("The issue before us, as a reviewing court, is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action.").

In this case, the administrative law judge found that there was reasonable suspicion for the traffic stop based on Trooper Olivarez's report, which states that he initiated the traffic stop after observing Villescas committing the traffic violation of failing to signal a right turn. *See* TEX. TRANSP. CODE ANN. § 542.001 (West 2011); *id.* § 545.104(a) (West 2011).

An officer may initiate a temporary detention, such as a traffic stop, when he has reasonable suspicion to believe that an individual is violating the law, even if the officer lacks probable cause. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. 2006); "Reasonable suspicion exists if an officer has specific and articulable facts that, taken together with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person has engaged or soon will engage in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). Thus, Trooper Olivarez's observation of Villescas committing the traffic violation of failing to signal a right turn is sufficient to support a finding of reasonable suspicion. *See State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011) (concluding that officer's testimony regarding observations of traffic violation supported legal conclusion that "there existed at least a reasonable suspicion that a traffic infraction had occurred"). This alone is sufficient to support the administrative ruling under review.

7

Nevertheless, we note that, on appeal, the Department has submitted five current street maps of the area in question and has asked this Court to take judicial notice of what they reflect. *See Granados v. State*, 843 S.W.2d 736, 738 (Tex. App.—Corpus Christi 1992, no pet.) ("[A] court may take judicial notice at any stage of the proceeding, whether requested or not. An appellate court may take judicial notice for the first time on appeal.") (citations omitted). As a general rule, courts will take judicial notice of facts generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination. *Id.* Accordingly, we take judicial notice of the maps submitted by the Department.

Our review of the maps, the report of Trooper Olivarez and the testimony from Hernandez indicates that Trooper Olivarez's report contains one or more inaccurate statements of fact. Specifically, it appears that Trooper Olivarez misidentified either the location of the traffic stop or the street onto which Villescas turned without signaling.

The maps indicate that Borolo Road is accessible from Depot Road. If Villescas's vehicle was traveling southbound on Depot Road while Trooper Olivarez was traveling northbound on the same road, as stated in his report, it is possible that he could have observed her making a right turn onto Borolo Road, as stated in the report. However, if this is what happened, then it would place the location of the traffic stop at the northeast entrance to the Ravenswood neighborhood, facing west. Yet, Trooper Olivarez's report states that the traffic stop occurred at the south-side entrance, facing north. Thus, in this scenario, Trooper Olivarez misidentified the location of the stop.

Hernandez testified that the stop occurred at the south-side entrance of the neighborhood, as stated in Trooper Olivarez's report. If this were true, then it would be impossible for Trooper Olivarez to have witnessed Villescas turning right onto Borolo

8

Road without signaling. However, he could have witnessed Villescas turning right onto Chapin Road. In this scenario, Trooper Olivarez misidentified Chapin Road as Borolo Road, but he correctly identified the location of the stop.

Regardless of which scenario is accepted, it remains that Trooper Olivarez observed Villescas turning right without signaling. There is no evidence to the contrary. Hernandez testified that Villescas did not turn right onto Borolo Road, but he did not testify about whether she turned right onto Chapin Road. Hernandez did not testify that Villescas used her signal when turning. Thus, even accepting Hernandez's testimony as true, it remains possible that Trooper Hernandez observed Villescas turning right onto Chapin Road without signaling, which was sufficient for him to have reasonable suspicion for a traffic stop. Accordingly, we conclude that there is substantial evidence supporting the administrative law judge's finding. *See Mireles*, 9 S.W.3d at 131. The trial court erred in ruling to the contrary. Appellant's first issue is sustained.[2]

### III. CONCLUSION

We reverse the judgment of the trial court and render judgment reinstating the administrative law judge's decision authorizing the Department's suspension of Villescas's driver's license.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
1st day of November, 2012.

---

[2] We dismiss appellant's second issue as moot.

9