

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00015-CR
_____

DOUGLAS WAYNE PILLARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 1
Tarrant County, Texas
Trial Court No. 1302247

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley
Concurring Opinion by Justice Carter

MEMORANDUM OPINION

Douglas Wayne Pillard pled guilty to and was convicted of driving while intoxicated (DWI), a class B misdemeanor. Pillard's ninety-day jail sentence and fine of $750.00 were suspended, and he was placed on community supervision for a period of eighteen months. On appeal,[1] Pillard challenges the trial court's denial of his motion to suppress, arguing that the arresting officer lacked reasonable suspicion to conduct the investigative stop that resulted in his arrest. Because we find that the arresting officer had reasonable suspicion to conclude that Pillard was driving while intoxicated, we affirm the trial court's judgment.

## I.     Standard of Review

"We review a trial court's ruling on a motion to suppress evidence for abuse of discretion and overturn that ruling 'only if it is outside the zone of reasonable disagreement.'" *Hutchison v. State*, 424 S.W.3d 164, 175 (Tex. App.—Texarkana 2014, no pet.) (quoting *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011)); *see Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). "In reviewing such a ruling, we apply a bifurcated standard of review." *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). "We approach our review with two standards, 'giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely on the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility

---

[1]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

determinations.'" *Hutchinson*, 424 S.W.3d at 175 (quoting *Martinez*, 348 S.W.3d at 922–93); *see State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Wilson*, 311 S.W.3d at 458; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. A trial court's ruling on a motion to suppress will be affirmed if it "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (per curiam).

## II.     Evidence at the Suppression Hearing

Pillard was stopped by Daniel McLean, "the DWI officer with the City of Grapevine," Texas. McLean testified that he had completed approximately two dozen DWI-related courses and had conducted thousands of DWI stops. McLean was monitoring traffic leaving an area known for its bars when he spotted Pillard's truck travelling at a slow rate of speed after 2:00 a.m. "when the bar scene closes." Using a recently calibrated Dopplar radar, McLean verified that the truck was travelling at twenty miles per hour in a forty-mile-per-hour zone.[2] McLean followed the truck, "observed the vehicle weaving within its lane of travel," and pulled the truck over based on a suspicion that the driver might be intoxicated.

---

[2]There was no posted minimum speed limit on the stretch of roadway driven by Pillard.

**III.    Analysis**

A routine traffic stop gives rise to questions under both the United States and Texas Constitutions and, under both, must be reasonable. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. In this case, it is undisputed that the officer did not have a warrant to stop Pillard's vehicle. Thus, the State was required to prove that the seizure was reasonable. *See Delafuente v. State*, 414 S.W.3d 173, 176 (Tex. Crim. App. 2013).

Law enforcement officers may stop and briefly detain individuals suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To make an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that in light of the officer's experience and general knowledge would lead the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Graves v. State*, 307 S.W.3d 483, 489–90 (Tex. App.—Texarkana 2010, pet. ref'd); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). This is an objective standard that disregards any subjective intent of the officer making the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The facts used to support the investigative stop must support more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

Pillard points out that McLean never witnessed a traffic violation. However, "[t]here is no requirement that a traffic regulation has been or is about to be violated in order for an officer

4

to have reasonable suspicion sufficient to justify a stop of a vehicle." *James v. State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd); *see State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App.—El Paso 2010, pet. ref'd). "An officer may be justified in stopping a driver based upon a reasonable suspicion of driving while intoxicated." *James*, 102 S.W.3d at 172; *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd).

Although McLean testified that Pillard's truck was weaving within his lane of travel, Pillard argues (1) that the video recording of the investigative stop shows that Pillard was not weaving within the lane and (2) that the truck's slow rate of speed was not sufficient to establish reasonable suspicion for the detention.

We disagree with Pillard's first argument. In *Carmouche*, an officer testified he obtained consent to conduct a pat-down search of the defendant, which led to the discovery of narcotics. *Carmouche*, 10 S.W.3d at 327. Based on the officer's testimony, the trial court overruled the defendant's motion to suppress, impliedly finding that consent to search was given. *Id.* at 327–28. After reviewing a video recording of the arrest—which did not support the officer's testimony that the defendant consented to the search—the Texas Court of Criminal Appeals wrote, "[W]e cannot blind ourselves to the videotape evidence" where the "videotape presents indisputable visual evidence contradicting essential portions of [an officer's] testimony." *Id.* at 332. In this circumstance, the court declined to give "almost total deference" to the historical factual determinations made by the trial court. *Id*. Citing to *Carmouche*, Pillard argues that we

5

should review de novo the court's implied finding of weaving within the lane because the recording does not show any weaving within the lane.[3]

Here, McLean testified, "[W]hen I moved out after the vehicle, I observed the vehicle weaving within its lane of travel." The nighttime video recording taken from McLean's patrol car is pixelated and unfocused. It shows that Pillard's truck passed McLean's patrol car by approximately one block before McLean decided to initiate pursuit. Because Pillard's vehicle was at a distance, the video recording does not clearly depict the lanes on the roadway during the time of McLean's initial approach to the truck. Thus, unlike the video recording in *Carmouche*, the recording in this case does not present indisputable visual evidence contradicting McLean's testimony that Pillard was weaving within his lane of travel.[4] Thus, we defer to the trial court's implied finding—based on McLean's testimony—that Pillard was weaving within his lane.

In *Delafuente*, the Texas Court of Criminal Appeals found that "[d]riving at a speed that is less than the posted limit is not, by itself, sufficient for reasonable suspicion." *Delafuente*, 414 S.W.3d at 178 (citing *Tex. Dept. Pub. Safety v. Gonzales*, 276 S.W.3d 88, 93 (Tex. App.—San Antonio 2008, no pet.)).[5] According to *Delafuente*, the record in this case would require reversal

---

[3]*See State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)) (discussing implied findings).

[4]Moreover, recognizing that the language in *Carmouche* created potential for confusion, the Texas Court of Criminal Appeals reaffirmed that a reviewing court should afford almost total deference to "a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006); *see State v. Duran*, 396 S.W.3d 563, 570–71 (Tex. Crim. App. 2013). It is possible that the trial court could have reviewed the unclear video recording and determined that Pillard was weaving within the lane.

[5]In *Gonzales*, the trial court found that evidence of a defendant's slow rate of speed and weaving within the lane was not sufficient to establish reasonable suspicion to stop the defendant for the specific traffic violation of impeding traffic where there was no evidence that traffic was being impeded. *Gonzales*, 276 S.W.3d at 93–94. Pillard argues

if driving at twenty miles per hour in a forty-mile-per-hour zone was the only observation used to support McLean's reasonable suspicion that Pillard was intoxicated. However, there was also evidence that Pillard (1) was leaving an area populated by bars serving alcoholic drinks (2) after their normal closing time and (3) was weaving within his lane. We find that these articulable facts, combined with the truck's slow rate of speed, would lead an officer of McLean's experience and general knowledge to reasonably conclude that Pillard was driving while intoxicated. *See Curtis v. State*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007); *Barnes v. Tex. Dept. of Pub. Safety*, No. 02-13-00020-CV, 2013 WL 3325101, at \*\*2–3 (Tex. App.—Fort Worth Jun. 27, 2013, no pet.) (mem. op.) (citing *McQuarters*, 58 S.W.3d at 255 (holding that officer's suspicion that driver was falling asleep or intoxicated was reasonable based on observations of driver driving slowly and twice crossing lane stripe even "assuming [officer's] testimony may not have established a reasonable suspicion that appellant had violated a traffic law")); *State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App.—El Paso 2010, pet. ref'd) (police officers trained to detect persons driving while intoxicated had reasonable suspicion to stop driver suspected of DWI after observing driver swerving within a lane even though driver did not violate any traffic regulations); *see generally James*, 102 S.W.3d 162.

Based on the totality of the circumstances, we find that McLean had reasonable suspicion to initiate the investigative stop. Consequently, we overrule Pillard's point of error.

---

that his case is analogous to *Gonzales*. Yet, in distinguishing *Gonzales* from other DWI cases, the court clarified that the officer did not suspect that *Gonzales* was intoxicated at the time of the investigative stop, and the only reason for the stop was the alleged traffic violation. *Gonzales*, 276 S.W.3d at 94; *see James*, 102 S.W.3d at 171–72 (distinguishing investigative stops based on alleged traffic violations from stops based on suspicion of DWI).

## IV.     Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

CONCURRING OPINION

The basis for the detention of Douglas Wayne Pillard was Officer Daniel McLean's observation that Pillard was driving a vehicle twenty miles per hour in a forty-mile-per-hour zone, in an area where alcoholic beverages are served, and after the normal closing hour for bars. According to McLean, Pillard's vehicle also swerved or weaved within its own lane. If this were a case of first impression for this Court, I would be inclined to hold that the stop was made on speculation and hunch rather than reasonable suspicion. Driving slower than the posted maximum speed limit, standing alone, does not constitute reasonable suspicion. *Delafuente v. State*, 414 S.W.3d 173, 178 (Tex. Crim. App. 2013). Here, there is no evidence that such driving impeded the flow of any traffic. Further, I do not understand how driving within one lane of traffic and not interfering with any other traffic, even if the vehicle deviates slightly from a due straight course, authorizes a reasonable suspicion that one is intoxicated. What is left in this case is that the officer, late at night, observed Pillard's vehicle in an area where alcoholic beverages are sold. Is that, alone, sufficient to justify a warrantless detention? I do not believe so.

8

However, I recognize that this Court previously held that very similar actions constituted reasonable suspicion for detention. *See Raffaelli v. State*, 881 S.W.2d 714, 716 (Tex. App.—Texarkana 1994, pet. ref'd) (observation of vehicle weaving within single lane of travel, although not inherently illegal, sufficient to create reasonable suspicion for detention). Based on this existing precedent, I concur in the judgment.

Jack Carter
Justice

Date Submitted:     August 13, 2014
Date Decided:      August 14, 2014

Do Not Publish

9