

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00410-CV

Julian Javier **CARDOZA**,
Appellant

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY**,
Appellee

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 18-01-35159-MCVAJA
Honorable Amado J. Abascal, III, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Luz Elena D. Chapa, Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: February 27, 2019

AFFIRMED

Appellant Julian Javier Cardoza appeals from the trial court's judgment affirming an administrative order suspending his driver's license. On appeal, Cardoza contends the trial court erred in affirming the suspension order because appellee, the Texas Department of Public Safety ("the TDPS"), failed to prove law enforcement had reasonable suspicion to stop Cardoza for operating a motor vehicle in a public place while intoxicated, and there is no evidence he actually operated a motor vehicle while intoxicated. We affirm the trial court's judgment.

**BACKGROUND**

Late at night, TDPS patrol officer Brandon Blessing saw a car parked on the side of the road. The car's hazard lights were on, the hood was up, and the driver was walking around the vehicle. Approximately forty minutes later, Trooper Blessing saw the car in the same location. The car's hazard lights were still on and the hood was still up, but the driver appeared to be changing a flat tire. The trooper activated his lights and pulled over to conduct a welfare check and render assistance. In his report, Trooping Blessing stated he asked the driver "if everything was ok." He saw the driver having difficulty using the jack and placing the flat tire in the trunk. Trooper Blessing asked the driver to produce his driver's license, but the driver was unable to comply with the request. The driver was later identified as Cardoza.

During this encounter, Trooper Blessing noticed Cardoza had "red bloodshot and glossy [sic] eyes." The trooper spoke to the passengers in the car — both of whom were under the age of fifteen — and asked if Cardoza had been drinking. They stated he had not. However, Trooper Blessing's partner, Trooper Austin Roberts, who was standing downwind, noticed Cardoza was "emitting a strong odor of an alcoholic beverage from his person." Cardoza admitted he had consumed three or four drinks.

Based on the signs of intoxication observed by the troopers — bloodshot eyes, strong odor of alcohol, difficulty changing the tire and placing the flat tire in the trunk, and the admission of consumption of alcohol — Trooper Blessing administered the standard field sobriety tests to Cardoza. In performing the Horizontal Gaze Nystagmus, Trooper Blessing observed in Cardoza's eyes "lack of smooth pursuit," "distinct and sustained Nystagmus at maximum deviation[,]" and "onset of Nystagmus prior to 45º[.]" On the walk and turn portion of the test, Cardoza: (1) could not maintain his balance as the trooper provided instructions; (2) stopped while he was walking; (3) was unable to walk heel to toe; (4) stepped off the straight line; (5) used his arms to balance

himself; and (6) took the wrong numbers of steps. When reminded to count out loud, Cardoza started at seven, counted to ten and then counted "6, 8, 9, and 10." As for the one-leg stand test, Trooper Blessing reported that Cardoza swayed, used his arms to balance himself, and put his foot down. Cardoza was unable to follow the instructions and had to be reminded to count out loud and to keep his arms down by his side.

Trooper Blessing asked Cardoza to take a roadside breathalyzer test. Cardoza refused, admitting he knew he would fail. The trooper again asked Cardoza how much he had to drink, but this time he said he "stopped counting around 8" light beers.

Trooper Blessing arrested Cardoza for the offense of driving while intoxicated. After he was given the required statutory warnings, Cardoza admitted, "I'm already f_____ up." The troopers released the minors and the car to Elizabeth Cardoza. The report does not indicate if Ms. Cardoza was already at the scene or was contacted and asked to come to the scene to retrieve the minors and the car. Once Cardoza was transported to the Maverick County Jail, he provided two breath samples, registering 0.105 and 0.102 – above the legal limit.

The TDPS subsequently suspended Cardoza's driver's license. Cardoza appealed the suspension and an administrative hearing was held. At the hearing, the TDPS submitted the following documents into evidence: (1) Trooper Blessing's sworn report; (2) an affidavit from the Breath Test Technical Supervisor, who certified the administration of the breath test, the instrument used for the test, the qualifications of the trooper who administered the test, and the test results; and (3) the Forensic Breath Alcohol Analytical Report, which included the results of the breath test.

At the hearing, Cardoza argued suspension was improper because the evidence submitted by the TDPS failed to establish either probable cause or reasonable suspicion and failed to demonstrate Cardoza was driving or had violated any traffic provision. Cardoza also pointed out

that at the time of the interaction between himself and the troopers, there was another adult at the scene, Elizabeth Cardoza. Cardoza claimed the trooper jumped to conclusions, given that he never saw Cardoza driving, and there was another person at the scene who could have been the driver. The administrative law judge ("the ALJ") made findings of fact and conclusions of law, concluding suspension of Cardoza's license was proper because the TDPS had proved by a preponderance of the evidence that: (1) Cardoza had an alcohol concentration of 0.08 or more while operating a motor vehicle in a public place; and (2) there was reasonable suspicion to stop and probable cause to arrest Cardoza. *See* TEX. TRANSP. CODE ANN. § 524.035(a); *see also* TEX. PENAL CODE ANN. § 49.01(2)(B) (defining intoxicated).

Cardoza appealed the ALJ's ruling. After reviewing the administrative record and considering arguments of counsel, the trial court found the administrative decision "was reasonably supported by substantial evidence and … was not arbitrary and capricious." Accordingly, the trial court rendered judgment affirming the administrative decision suspending Cardoza's driver's license. Cardoza perfected this appeal.

## ANALYSIS

Cardoza contends the trial court's judgment should be reversed because: (1) the TDPS failed to prove by a preponderance of the evidence that law enforcement had reasonable suspicion to stop Cardoza on grounds he actually operated a motor vehicle in a public place; and (2) there is no evidence Cardoza operated or had previously operated a motor vehicle while intoxicated. The TDPS argues there is substantial evidence to support the ALJ's findings.

### Standard of Review

In reviewing an administrative order, we examine the record as a whole to determine whether the order is supported by substantial evidence. TEX. GOV'T CODE ANN. § 2001.174(2)(E); *Tex. Dep't of Pub. Safety v. Gonzalez*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio May 18, 2016,

no pet.) (citing *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam)). This standard of review is deferential. *Gonzalez*, 276 S.W.3d at 91; *see City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 243 n.1 (Tex. App.—Fort Worth 2007, pet. denied) (holding that reviewing court should not overturn decision of administrative agency unless it is "illegal, arbitrary or capricious; that is, that it is not reasonably supported by substantial evidence."). A reviewing court may not substitute its judgment for that of the ALJ with regard to the weight or credibility of the evidence. *Gonzalez*, 276 S.W.3d at 91 (citing *Mireles*, 9 S.W.3d at 131). "The issue for the reviewing court is not whether the ALJ's decision was correct, but rather whether there is some reasonable basis in the record for the administrative decision." *Id.* Under the substantial evidence standard, the complaining party has the burden to overcome the presumption that substantial evidence supports the ALJ's findings, inferences, conclusions and decisions. *Id.* If there is more than a scintilla of evidence supporting the ALJ's findings, the reviewing court must affirm the decision — even if the evidence preponderates against it. *Mireles*, 9 S.W.3d at 131. A reviewing court may reverse an administrative decision only if it finds the appellant's substantial rights have been impaired because the ALJ's findings are not supported by the record in its entirety. *Gonzalez*, 276 S.W.3d at 91 (citing TEX. GOV'T CODE ANN. § 2001.174(2)(E)).

We review the trial court's substantial evidence review using the de novo standard. *Id.* (citing *Tex. Dep't of Pub. Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.)). "Substantial evidence exists if reasonable minds could have reached the same conclusion." *Id.* (citing *Tex. Dep't of Pub. Safety v. Fecci*, 989 S.W.2d 135, 139 (Tex. App.—San Antonio 1999, pet. denied)). In determining whether substantial evidence supports the ALJ's decision, we are governed by the following:

● the trial court will hear and consider evidence to determine whether reasonable support for the ALJ's order exists, but the ALJ remains the primary fact-finding body, and the question for the trial court is strictly one of law;

● the trial court may not substitute its judgment for that of the ALJ on controverted issues of fact;

● if the ALJ heard substantial evidence that would support either an affirmative or negative finding, the trial court must allow the ALJ's order to stand, even if the court would have differed with the result;

● the trial court may not set aside the ALJ's ruling merely because there was conflicting or disputed testimony; and

● the trial court is concerned only with the reasonableness of the ALJ's order not its correctness.

*Id.*

*Application*

Section 524.035(a) of the Texas Transportation Code provides that at a hearing regarding the suspension of a person's driver's license, the TDPS must prove, by a preponderance of the evidence, that: (1) the person had an alcohol concentration of 0.08 or more while operating a motor vehicle in a public place; and (2) there was reasonable suspicion to stop or probable cause to arrest the person. TEX. TRANSP. CODE ANN. § 524.035(a). Cardoza initially challenges the second part of section 524.035 — whether the troopers had reasonable suspicion to stop Cardoza. Cardoza argues there was no reasonable suspicion for the troopers to stop Cardoza because they had no reasonable suspicion of criminal activity. Next, he contends there is no evidence Cardoza operated a motor vehicle while intoxicated.

1. *Reasonable Suspicion to "Stop" Cardoza?*

As this court recognized in *Texas Department of Public Safety v. Svoboda*, not all interactions between law enforcement and citizens implicate the United States and Texas Constitutions. No. 04-05-00796-CV, 2006 WL 1684793, at *2 (Tex. App.—San Antonio June 21, 2006, pet. denied) (mem. op.) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Law enforcement personnel and citizens may engage in three distinct types of interactions: (1) consensual

encounters, (2) investigatory detentions, and (3) arrests. *Johnson v. State*, 414 S.W.3d 184, 191 (Tex. Crim. App. 2013) (citing *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011)). Investigatory detentions and arrests involve a seizure, and thus implicate federal and state constitutional protections. *Id.* (citing *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011)). However, consensual encounters do not implicate constitutional protections. *Id.* The TDPS contends the interaction between the troopers and Cardoza began as a consensual encounter, and therefore reasonable suspicion or probable cause was not a requisite to the interaction. We agree. *See Svoboda*, 2006 WL 1684793, at *2–*3.

Contrary to Cardoza's assertion, an officer need not show any particular level of suspicion to engage in an encounter with a citizen because the citizen is not under any obligation to continue the interaction with the officer. *Woodard*, 341 S.W.3d at 411. In other words, Trooper Blessing did not need reasonable suspicion of criminal activity in order to determine why Cardoza was still stopped on the side of the road — with his hazards on and car hood up — nearly forty minutes after the troopers first observed him in the same circumstances. *See id.* An officer may approach a citizen to ask questions, request identification, or even request consent to search if the officer does not suggest compliance is mandated. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (citing *Fla. v. Bostic*, 501 U.S. 429, 434 (1991)). Here, the interaction between the troopers and Cardoza began as an encounter — troopers stopping to render assistance — so reasonable suspicion was not required.

The record shows Cardoza's car was stopped on the side of a public road before the troopers ever saw him. In fact, the car's location on the side of the road is what prompted the troopers' inquiry. Cardoza was not *stopped* by the TDPS. Trooper Blessing's report shows the troopers made contact with Cardoza "to render assistance," asking "if everything was okay," given that Cardoza's vehicle had been parked on the side of the road with its hazards on and hood up for

approximately forty minutes. Under these circumstances, we hold the troopers did not need reasonable suspicion for their initial contact with Cardoza as it was merely an encounter.[1] *See Svoboda*, 2006 WL 1684793, at \*2–\*3. Cardoza's Fourth Amendment rights were not implicated — and no reasonable suspicion was required — until the encounter escalated to an investigative detention. *See Banda v. State*, 317 S.W.3d 903, 910 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Here, that occurred only when the troopers' observations suggested Cardoza drove while intoxicated.

The TDPS also contends the troopers could have engaged with Cardoza based on their community caretaking function. As we recognized in *Svoboda*, the concept was first articulated by the Supreme Court when it observed:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers ... frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

2006 WL 1684793, at \*3 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). In *Svoboda*, we held the traffic stop was justified under the community caretaking function because the officer

---

[1] We recognize that in his findings of fact and conclusions of law the ALJ stated "reasonable suspicion existed to stop" Cardoza. However, whether a given set of historical facts amounts to an encounter, detention, or arrest is subject to de novo review because it is a question of law. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Moreover, in determining whether substantial evidence exists, we conduct a de novo review and within that review, are governed by the principle of whether support for the ALJ's order exists and its reasonableness rather than its correctness. *Gonzalez*, 276 S.W.3d at 91. Finally, as noted above, we may reverse an administrative decision only if we find the appellant's substantial rights have been impaired because the ALJ's findings are not supported by the record in its entirety. *Id.* (citing TEX. GOV'T CODE ANN. § 2001.174(2)(E)). Thus, the ALJ's mischaracterization of the situation does not require reversal of the trial court's judgment affirming the ALJ's administrative order of suspension — based on the record, the order is reasonable and does not impair Cardoza's substantial rights. *See id.*

had an objectively reasonable basis for concern about the welfare of the defendant, who was traveling twenty miles per hour under the speed limit in the early hours of the morning and then, on his own volition, came to a complete stop on the side of the road. *Id.*

Here, the troopers saw Cardoza walking around his car — hazards flashing and hood up — at approximately 11:45 p.m. on the side of the road. Approximately forty minutes later, they saw Cardoza's car in the same place with hazards still flashing and the hood up, but this time he appeared to be changing a flat tire. These facts support a conclusion that the troopers had a reasonable basis for a legitimate concern for Cardoza's welfare that would justify an inquiry under the community caretaking function. *See id.*

2. *Sufficient Evidence Cardoza Operated Motor Vehicle While Intoxicated?*

At the administrative hearing, the TDPS was tasked with proving by a preponderance of the evidence that Cardoza had a blood alcohol concentration above the legal limit of 0.08 while operating a motor vehicle in a public place. *See id.* § 524.035(a)(1). Based on the evidence submitted by the TDPS, the ALJ found Cardoza had a blood alcohol concentration above the legal limit of 0.08 while operating a motor vehicle in a public place. *See id.* As set out above, we must uphold the administrative decision if there is more than a scintilla of evidence to support the ALJ's finding — even if the evidence preponderates against it. *See Mireles*, 9 S.W.3d at 131. The issue is only whether there is some reasonable basis in the record for the ALJ's decision, and the burden is on Cardoza to overcome the presumption that substantial evidence supports the ALJ's findings, inferences, conclusions, and decisions. *See Gonzalez*, 276 S.W.3d at 91 (citing *Mireles*, 9 S.W.3d at 131).

Cardoza contends that although the evidence may have established he was intoxicated and in a public place, there is no evidence he was *operating* his vehicle while legally intoxicated. The question, however, is whether the evidence is such that the ALJ could have reasonably inferred

Cardoza had been operating his vehicle while intoxicated. *See id.* In support of his argument, Cardoza relies on *Texas Department of Public Safety v. Allocca*, 301 S.W.3d 364 (Tex. App.—Austin 2009, pet. denied).

There, Allocca's driver's license was suspended after he refused to provide a breath specimen. *Id.* at 366. He appealed, and at the administrative hearing, the evidence showed an officer responded to a "suspicious vehicle" call. *Id.* The officer found Allocca asleep in his car in his usual parking space behind the Jiffy Lube where he worked. *Id.* The car was in park, the front seat was reclined, and Allocca's feet were on the floorboard. *Id.* The engine was running and the air conditioning was turned on. *Id.* His vehicle showed no sign that it had been involved in a collision and it was not blocking traffic or otherwise parked in a manner that would indicate Allocca had driven there while intoxicated. *Id.*

At the hearing, Allocca testified that he had gone to a bar after work. *Id.* After being dropped off at his car, he got in, ate some food, and reclined the driver's seat to sleep. *Id.* When asked why he went to sleep, Allocca admitted to a prior arrest for DWI, stating he slept in his vehicle because he did not want to be arrested again for that offense. *Id.* Allocca testified that although the vehicle was not running when he first went to sleep, he later woke up and turned it on to use the air conditioner because he was hot. *Id.*

The ALJ suspended Allocca's license for two years, but the trial court reversed that order. *Id.* The court of appeals agreed with the trial court, holding that under the totality of the circumstances, the officer did not have probable cause to believe Allocca was operating or had operated his vehicle while intoxicated. *Id.* at 370. The appellate court noted that although the Transportation Code does not define "operating," the Court of Criminal Appeals had held that for purposes of DWI, a defendant operates a vehicle when the totality of the circumstances demonstrate "that the defendant took action to affect the functioning of his vehicle in a manner

that would enable the vehicle's use." *Id.* at 368 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). That Court recognized this definition does not require that the vehicle actually move.[2] *Id.*

We find *Allocca* distinguishable. Unlike *Allocca*, there is no question that at the time the troopers confronted Cardoza, he was not operating his vehicle — he was outside the vehicle attempting to change a flat tire. In *Allocca*, the TDPS "essentially conceded" the only way Allocca could have operated a vehicle while intoxicated was if turning on the engine in the parking lot constituted operation of a motor vehicle. *Id.* at 370 n.8. Here, the TDPS argues that there is more than a scintilla of evidence to have allowed the ALJ to infer Cardoza *had operated* his vehicle while legally intoxicated. *See Mireles*, 9 S.W.3d at 131. We agree.

We begin with the proposition accepted by the ALJ that an officer need not observe a defendant actually driving a vehicle to establish the defendant was operating or had operated a vehicle while intoxicated; rather other observations may be sufficient. *See Allocca*, 301 S.W.3d at 369. Unlike the driver in *Allocca*, Cardoza was not parked in a parking space behind his place of employment. Rather, Cardoza was stopped on the side of a road changing a flat tire in the early hours of the morning with two minor children. The ALJ could have reasonably inferred Cardoza was operating the vehicle when the tire went flat and he stopped to change it.

Unlike *Allocca*, Cardoza never presented any evidence that someone else drove him from where he admittedly had been drinking to the place where the troopers encountered him. There was no evidence presented regarding the presence of other vehicles or that Cardoza was near a populated area. Although Cardoza contends the evidence shows "[t]here was [sic] other adults that were on the scene," implying someone else could have been driving, the evidence shows only

---

[2] In *Denton*, the court held "operation" occurred when the defendant started the ignition and revved the accelerator in an attempt to move the vehicle. 911 S.W.2d at 390.

that the minor children and Cardoza's vehicle were released to Elizabeth Cardoza. Given that Trooper Blessing stated in his report there were only two passengers in the vehicle, the ALJ could have reasonably inferred that Ms. Cardoza was called to the scene to take possession of the children — neither of whom were old enough to drive — and the vehicle. There was also no evidence of any alcohol at the scene. Cardoza admitted he had been drinking and he was the only person at the scene who could have lawfully driven the vehicle. From this, the ALJ could have inferred Cardoza consumed the alcohol before he drove to the location where the troopers found him.

The ALJ could have found that before his encounter with the troopers, Cardoza consumed alcohol and became intoxicated. He then got into his vehicle with the minor children and drove the vehicle on a road where he suffered a flat tire. Thus, despite the fact troopers did not observe Cardoza operating the vehicle while legally intoxicated, the ALJ could have reasonably inferred, based on the 0.105 and 0.102 breathalyzer results, that Cardoza had operated a vehicle while legally intoxicated.

We hold there is more than a scintilla of evidence to support the ALJ's decision and the record provides a reasonable basis to support that decision. *See Mireles*, 9 S.W.3d at 131; *Gonzalez*, 276 S.W.3d at 91. Cardoza failed to overcome the presumption that substantial evidence supports the ALJ's findings, inferences, conclusions, and decisions. *See Mireles*, 9 S.W.3d at 131; *Gonzalez*, 276 S.W.3d at 91.

## CONCLUSION

Based on the foregoing analysis, we hold (1) the initial interaction between Cardoza and the troopers was a consensual encounter that did not require reasonable suspicion of criminal activity, and that ultimately, troopers had reasonable suspicion to detain Cardoza for investigative purposes; and (2) the record as a whole establishes the ALJ's determination that Cardoza operated

a motor vehicle in a public place while intoxicated is supported by substantial evidence. Accordingly, we affirm the trial court's judgment affirming the ALJ's administrative decision.

Beth Watkins, Justice