PD-0046-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/12/2015 12:00:00 AM
Accepted 1/16/2015 3:57:54 PM
ABEL ACOSTA
CLERK

## PD-0046-15

IN THE

COURT OF CRIMINAL APPEALS

AT

AUSTIN, TEXAS

DONALD WESTON KING, APPELLANT     §
§
§
VS.     §     NO. _____
§
§
THE STATE OF TEXAS, APPELLEE     §

_____

PETITION FOR DISCRETIONARY REVIEW
FROM THE COURT OF APPEALS FOR
THE THIRD DISTRICT OF TEXAS
NO. 03-14-00021-CR

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

KEVIN FINE
State Bar No.: 00790682
P.O. Box 312
Boerne, Texas 78006
512-593-1383/Hill Country
713-299-1923/Houston
1-888-803-8721/efax
kfine@kevinfinelaw.com

ATTORNEY FOR APPELLANT

# IDENTIFICATION OF PARTIES

Donald Weston King... … … … … … Defendant – Appellant

The State of Texas… … … … … … Appellee

Billy McNabb… … … … … … … Appellant's counsel at
144 E. San Antonio St. trial.
San Marcos, Texas 78666

Kevin Fine… … … … … … Appellant's counsel on
P.O. Box 312 appeal.
Boerne, Texas 78006

David Levingston… … … … … … State's Counsel at trial.
Hays County District Attorney's Office
712 S. Stagecoach Trail, Suite 2057
San Marcos, Texas 78666

Christopher Johnson… … … … … … State's Counsel on
Hays County District Attorney's Office appeal.
712 S. Stagecoach Trail, Suite 2057
San Marcos, Trail 78666

Honorable Robert Updegrove… … … … Trial Judge
Judge, Hays County Court at Law No. One
712 S. Stagecoach Trail, Suite 2292
San Marcos, Texas 78666

# TABLE OF CONTENTS

Identification of the Parties…………………………………………………… i

Table of Contents…………………………………………………………….... ii

Index of Authorities…………………………………………………………... iii

Statement Regarding Oral Argument……………………………………….. iv

Statement of the Case…………………………………………………….… 1

Procedural History…………………………………………………………….. 1

Ground for Review (Ground Restated)..…………………………………… 3

Arguments and Authorities…………………………………………………… 3

Conclusion………………………………………………………………….. 16

Prayer………………………………………………………………………….. 17

Appendix

      Memorandum Opinion ..……………………………………………… A
      Dissenting Opinion……………………………………………………. B
      Order Denying Motion for *En Banc* Reconsideration………………… C

# INDEX OF AUTHORITIES

## Cases

*Abney v. State*, 394 S.W.3d 542 (Tex. Crim. App. 2013)...............................passim

*Arroyo v. State*, 2011 Tex. App. LEXIS 679 (Tex. App. Houston [1st Dist.] Jan. 27, 2011)..........................................................................................1, 7, 8

*Azeez v. State*, 248 S.W.3d 182, 192 (Tex. Crim. App. 2008).............................13

*Boykin v. State*, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991)...........................15

*Curtis v. State*, 209 S.W.3d 688, 695 (Tex. App. Texarkana 2006)........................7

*Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007).......................................7

*Entergy Gulf States, Inc. v. Summers*, 282 S.W3d 433, 437 (Tex. 2009)............15

*Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) ...............................16

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) .............................4, 6

*In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007)......................................12

*King v. State*, 2014 Tex. App. LEXIS 12375 (Tex. App. - Austin Nov. 14, 2014) (mem. op., not designated for publication).................................................passim

*Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied) ......................................................12

*Moreno v. State*, 2004 Tex. App. LEXIS 9104 (Tex. App. - Houston [1st Dist.] Oct. 14, 2004).....................................................................................................8

*Reed v. State*, 308 S.W.3d 417, 421 (Tex. App. - Fort Worth 2010, no pet)............7

*Tex. Dep't of Public Safety v. Gonzales*, 276 S.W.3d 88 (Tex. App.—San Antonio 2008, no pet.)..................................................................................................1, 8

*Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004)........................................................................15

*Travis County D.A. v. M.M.*, 345 S.W.3d 920, 922 (Tex. App. – Austin 2011, no pet) ................................................................................................................15

*Villarreal v State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J. concurring) .....................................................................................................4, 6

## Statutes

TEX. TRANSP. CODE § 545.103 .............................................................................11

TEX. TRANSP. CODE § 545.152 .............................................................................11

TEX. TRANSP. CODE § 545.155 .............................................................................11

TEX. TRANSP. CODE § 545.101 .............................................................................11

TEX. GOV. CODE § 311.021 ............................................................................15
TEX. GOV. CODE § 311.026 ............................................................................13
TEX. TRANSP. CODE § 545.051 ..............................................................5, 12, 15
TEX. TRANSP. CODE § 545.102 ....................................................................11, 12

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests the Court grant oral argument. The majority's decision conflicts with another court of appeal's decision on the same issue, it also implemented the abuse of discretion standard in a way that conflicts with this Court's decisions and the majority and the dissent disagreed on a material question of law necessary to the court's decision. Thus, oral argument would aid the Court in rendering its decision.

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

COMES NOW, Donald Weston King, Appellant in the above-styled and numbered cause, and files this, his Petition for Discretionary Review and, with respect thereto, would show the Court the following.

## I.  STATEMENT OF THE CASE

On November 14, 2014, a majority of a three justice panel of the Third Court of Appeals affirmed the trial court's denial of Appellant's motion to suppress.  Chief Justice Jones dissented.  In rendering its decision, the majority, although stating it was conducting a *de novo* review of the application of the facts to the law, utilized the abuse of discretion standard.  In doing so, the majority's decision conflicts with another court of appeal's decision on the same issue. *See Tex. Dep't of Public Safety v. Gonzales*, 276 S.W.3d 88 (Tex. App.—San Antonio 2008, no pet.); *compare Arroyo v. State*, 2011 Tex. App. LEXIS 679 (Tex. App. Houston [1st Dist.] Jan. 27, 2011).  Further, it implemented the abuse of discretion standard in a way that conflicts with this Court's decisions. *See  Abney v. State*, 394 S.W.3d 542 (Tex. Crim. App. 2013).  Finally, the majority and the dissent disagreed on a material question of law necessary to the court's decision.

## I.  PROCEDURAL HISTORY

Appellant was arrested for the offense of driving while intoxicated on October 7, 2011.  On November 17, 2011, Appellant was charged by information

1.

with the offense. CR 8.[1]  On December 14, 2012, Appellant filed a motion to suppress alleging, *inter alia*, that the arresting officer lack reasonable suspicion to stop Appellant. CR 10.  A hearing on Appellant's motion was hade on January 29, 2013.  The sole witness at the hearing was the arresting officer.  On February 1, 2013, the trial court entered its order denying Appellant's motion to suppress.[2] CR 12.  Thereafter, on December 12, 2013, Appellant entered a plea of nolo contenere, pursuant to a plea bargain agreement, to the offense and was sentenced to year in the Hays County Jail, probated for 18 months, and assessed a fine of $800.00. CR 24.  Appellant reserved his right to appeal the trial court's ruling on his motion to suppress and perfected appeal by filing notice of appeal that same day. CR 23, 25. On November 14, 2014, a majority of a three justice panel of the Third Court of Appeals affirmed. ***King v. State***, 2014 Tex. App. LEXIS 12375 (Tex. App. - Austin Nov. 14, 2014) (mem. op., not designated for publication).  Appellant filed a Motion for *En Banc* Reconsideration which was denied December 11, 2014. *See* Appendix.  This Petition for Discretionary Review followed.

---

[1] CR refers to the Clerk's Record, followed by the page number.  The Reporter's Record is referenced by the volume number, followed by RR, and ending with the page number.  Thus, 3 RR 14 refers to volume 3, page 14 of the Reporter's Record.

[2] Although not relevant to the issue before the Court, Appellant notes the date of the order is February 1, 2013.  However, the trial court's order was not file-marked until March 13, 2013.

## II.  GROUND FOR REVIEW

THE COURT OF APPEALS ERRED BY UTILIZING THE ABUSE OF DISCRETION STANDARD, GIVING TOTAL DEFERENCE TO THE TRIAL COURT'S APPLICATION OF UNCONTESTED FACTS TO THE LAW, RATHER THAN CONDUCTING A TRUE *DE NOVO* REVIEW UNDER A TOTALITY OF THE CIRCUMSTANCES.

### Ground Restated

In conducting a *de novo* review under a totality of the circumstances standard, can an appellate court infer the arresting officer initiated the traffic stop because of a suspicion of DWI, where the record evidence from the hearing in the trial court shows the officer's only basis for the stop was a traffic violation?

## III.  ARGUMENTS AND AUTHORITIES

The majority used the wrong standard of review in upholding the trial court's denial of Appellant's motion to suppress.  Specifically, in reviewing the totality of the circumstances, the majority used an abuse of discretion standard rather than reviewing the record evidence *de novo*. **King** *supra.*

In **Abney**, the Court of Criminal Appeals set forth the circumstances under which a *de novo* review should be undertaken rather than under an abuse of discretion standard. **Abney**, 394 S.W.3d 542.  Regarding *de novo* review, the Court stated:

> [C]ourts review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor.  As we explained in

3.

> *Loserth v. State*, [936 S.W.2d 770, 772 (Tex. Crim. App. 1998),] the critical factor is whether the resolution of the substantive question "turns" on an evaluation of credibility and demeanor. If the resolution of the question does not "turn" on the evaluation of credibility and demeanor, *de novo* review by the appellate court is appropriate. The fact that credibility and demeanor are important factors in the trial court's assessment does not always mean that the question "turns" on an evaluation of credibility and demeanor.

*Abney*, 394 S.W.3d at 547 (citations omitted).

In *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), the Court recognized that "it is very difficult to articulate a comprehensive consensus rule on the amount of deference appellate courts should afford to lower court rulings." In clarifying the issues concerning appellate review, the Court cited Judge McCormick's concurring opinion in *Villarreal* for the proposition that, if a trial court "is not in an appreciably better position" than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions. *Guzman v. State*, 955 S.W.2d at 89 (citing *Villarreal v State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J. concurring). In other words, where, as here, the facts are not in dispute or are not central to a determination of the legal issues, an appellate court should conduct a *de novo* review without deference to the trial court's findings as it would under an abuse of discretion standard.

4.

Here, although the majority correctly stated the appropriate standard, it did not apply that standard in its analysis. In particular, the majority concluded, "[v]iewing this evidence *in the light most favorable to the trial court's ruling and assuming that the trial court made implicit findings of fact based on rational inferences from this evidence*, we agree with the State that the record supports a finding of reasonable suspicion. *King*, mem. op. at 9-10.

It should be made clear the facts in this case have never been in dispute. The State argued reasonable suspicion was established on at least one of two separate bases: (1) an illegal u-turn under TEX. TRANSP. CODE § 545.051(c); or (2) suspicion of intoxication under a totality of the circumstances. These arguments were addressed separately below.

It is unclear what conclusion the majority reached regarding whether Appellant committed a traffic offense under TEX. TRANSP. CODE § 545.051(c). It appears the majority utilized the facts surrounding the alleged traffic violation in their totality of the circumstances analysis without reaching the merits of whether Appellant committed a traffic offense. *King*, mem. op. at 9. What is clear is that the majority utilized its limited analysis of the traffic violation to conclude that their review would be conducted under an abuse of discretion standard.

Specifically, the majority stated "the trial court was presented with a mixed question of law and fact wherein the resolution turned on an evaluation of the

5.

credibility and demeanor of the arresting officer." However, Appellant does not now, nor did he do so in his Brief, dispute the officer's belief that, at the time of the stop, Appellant was on a four-lane road when he performed the u-turn. *See* Appellant's Brf. at 7, 11-13. The question was not whether the officer was to be believed, but rather whether his belief was supported by the record. As such, under ***Villarreal***, ***Guzman***, and ***Abney***, it presented a question of law to be reviewed *de novo*.

The majority, however, found that, because the officer's testimony differed from a hand-drawn map presented at the hearing, the trial court was called upon to make a determination of credibility and demeanor and that, "[t]herefore, we give almost total deference to the trial court's ruling that reasonable suspicion existed." ***King***, mem. op. at 6. As pointed out, however, Appellant never disputed the facts, but only the objective reasonableness of those facts. In particular, in his Brief, Appellant argued "the evidence does not show the officer's belief and, by extension, the trial court's ruling, were objectively reasonable." Appellant's Brf. at 11.

In addition to Appellant's movement through the intersection and making a u-turn, legal or illegal, the majority considered three other factors under an abuse of discretion standard: (1) crossing a divider line; (2) the time of night; and (3) the officer's 15 years' experience. In failing to conduct a *de novo* review of these

6.

facts, the majority, without explanation, injected its own inferences beyond that supported by the record and ignored other evidence that was actually in the record.

The sum total of the majority's analysis is as follows:

> Here, in addition to the officer's testimony about the vehicle's movement through the intersection, the officer also observed the vehicle "failing to maintain a single lane" before it reached the intersection, the traffic stop occurred after midnight, and the officer had 15 years of experience. Viewing this evidence in the light most favorable to the trial court's ruling and assuming that the trial court made implicit findings of fact based on rational inferences from this evidence, we agree with the State that the record supports a finding of reasonable suspicion. Thus, considering the totality of the circumstances, we cannot conclude that the trial court erred when it denied the motion to suppress.

*King*, mem. op. 9-10 (citations omitted).

In support of its holding, the majority cites several cases for the proposition that weaving, time of day, and experience of the officer, in and of themselves, justify a finding of reasonable suspicion that the driver was intoxicated. However, unlike this case, every case, with the exception of one, cited by the majority included testimony by the arresting officer that he or she suspected the defendant was intoxicated. *Arroyo v. State*, 2011 Tex. App. LEXIS 679 (Officer testified he stopped the defendant based, at least in part, on his suspicion she was intoxicated.); *Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007) (Officer testified he suspected the defendant was intoxicated and initiated the stop, at least in part, on that basis. For officer's testimony *see Curtis v. State*, 209 S.W.3d 688, 695 (Tex.

7.

App. Texarkana 2006)); **Reed v. State**, 308 S.W.3d 417, 421 (Tex. App. - Fort Worth 2010, no pet) (Officer testified he stopped defendant because of driving violations and because he suspected she was intoxicated based on the time of day, area of the city, and his experience with intoxicated drivers exhibiting similar characteristics of driving.)(cited in **Arroyo**, *supra*); **Moreno v. State**, 2004 Tex. App. LEXIS 9104 (Tex. App. - Houston [1st Dist.] Oct. 14, 2004) (Officer testified he stopped defendant because he suspected she was intoxicated.)(cited in **Arroyo** *supra*).

Importantly, the Houston Court, in **Arroyo**, rejected the defendant's argument that **Gonzales**, 276 S.W.3d at 94, applied to her case. The court noted "[t]he officer [in **Gonzales**] did not state that he suspected the defendant was intoxicated." Therefore, the court of appeals held the case was not applicable to Arroyo's case because the officer in her case did testify to such.

In the present case, like **Gonzales**, the officer did not state he suspected Appellant was intoxicated. As made clear by Justice Jones in his dissent, [t]here is no evidence or testimony that [A]ppellant's actions were indicative of driving while intoxicated, nor did [the officer] testify that he had any such suspicion." **King**, mem. op. at 20 (Jones, C.J. dissenting). "In essence, the totality of what [the officer] observed was nothing more than the vaguely described failure to maintain a single lane and the u-turn. As discussed above, [the officer's] conclusory

8.

statement that appellant made an 'illegal' u-turn, without underlying facts, constitutes no evidence of current or threatened illegality." *Id*. at 20-21.

Justice Jones' *de novo* review of the totality of the circumstances analysis is well taken and incorporated below in support of Appellant's argument concerning the remaining factors under consideration.

> As to appellant's alleged failure to maintain a single lane, [the officer] testified that he could not remember how many times this happened and gave no details about it. Could the trial court 'infer' from this testimony that it happened three or four times? Or even twice? Of course not. That would be rank speculation. Inferences must be reasonable and based on facts in evidence. Could the trial court 'infer' that appellant's vehicle drifted into the adjacent lane by a significant amount, perhaps half the car's width? Of course not. There would be no reasonable basis for such an inference. Without resorting to pure speculation, all that can be reasonably inferred from the officer's testimony is that appellant's car drifted a few inches across the lane divider a single time.
> . . .
> [Additionally, the officer's] special training and experience are not sufficient to establish reasonable suspicion in the absence of "objective factual support."

*Id*. at 21-22.

Again, there was no testimony the officer suspected Appellant was intoxicated. At the hearing on Appellant's motion to suppress, the officer testified the only basis of the stop was his observation of two traffic violations. *Id*. at 19. By failing to review the totality of the circumstances *de novo*, the majority eliminated any consideration of the officer's testimony that the only reason for the stop was his observation of two traffic violations. Rather than take a 15 year

9.

veteran officer at his word, the majority injected its own speculation in order to uphold the trial court's ruling under the abuse of discretion standard. This error was further compounded by failing to consider both sides of the coin, so to speak, regarding the officer's 15 years of experience. As stated, the officer specifically testified the only basis for the stop was his observation of two traffic violations. In other words, based on 15 years' experience, his observations of Appellant's driving, at that time of night, did not lead him to believe Appellant was driving while intoxicated. Because the majority limited its review under an abuse of discretion standard, it necessarily turned a blind eye to the obvious – that the officer, based on his 15 years' experience and his own words on the record, had not observed sufficient facts to lead him to suspect Appellant was intoxicated.

In truth, the majority placed reasonable suspicion in the officer's mind, after-the-fact, when his own testimony, at least by reasonable inference, was that he did not have it. By testifying that he stopped Appellant only for specific traffic violations, the officer, by inference, established on the record that he did not suspect Appellant was intoxicated. The majority makes that inference for the officer under circumstances showing the officer had no such suspicion and the trial court had no basis for concluding that such suspicion was reasonable. The next logical step would be for the courts of appeal to inject such a speculative inference for an officer who affirmatively states that he or she did not have such a suspicion.

10.

Turning now to the question of whether Appellant made an illegal u-turn, Justice Jones' analysis is incorporated below in support of Appellant's argument.

> The only Texas statute that specifically addresses the legality of u-turns is section 545.102 of the Texas Transportation Code, which prohibits a driver from moving a vehicle "in the opposite direction when approaching a curve or the crest of a grade if the vehicle is not visible to the operator of another vehicle approaching from either direction within 500 feet." TEX. TRANSP. CODE § 545.102. There is no evidence that appellant's u-turn occurred under such circumstances. There is also no evidence that appellant made the u-turn unsafely or recklessly, in derogation of posted traffic signs, without proper signaling, over a median, in a no-passing zone, without yielding to opposing traffic, from the right-hand lane of a four-lane divided highway, or in any other manner suggestive of illegal activity.
>
> . . .
>
> The State contends, however, that appellant's turn was per se illegal under section 545.051 of the Transportation Code.
>
> . . .
>
> The State asserts that appellant was not permitted to make the u-turn because, by turning, he necessarily drove left of the center line in violation of section 545.051 and there is no evidence that any of the statutory exceptions apply. According to the State, left turns (and therefore all u-turns) are generally proscribed by the Code except as permitted by the exceptions in section 545.051 and other provisions of the Code that regulate the execution of turns. *See id.* §§ 545.101 (turning at intersection), .102 (turning in opposite direction on curve or crest of grade), .103 (generally prohibiting turning unless movement can be made safely), .152 (yielding when turning left at intersection or into alley, private road, or driveway), .155 (yielding when entering or crossing highway from alley, building, private road, or driveway).

11.

Section 545.051 does not expressly prohibit u-turns, and it has never been so construed. Moreover, construing section 545.051 to generally prohibit u-turns would render section 545.102 redundant and meaningless. *See **In re Estate of Nash***, 220 S.W.3d 914, 918 (Tex. 2007) (noting that courts "should avoid, when possible, treating statutory language as surplusage"); ***Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n***, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied) ("We will avoid a construction that creates a redundancy or renders a provision meaningless."). A provision prohibiting u-turns under the specific circumstances stated in section 545.102 would be mere surplusage if u-turns were categorically prohibited by section 545.051.

In this same vein, and at the risk of sounding redundant, Sections 545.051 and 545.102 are *in pari materia* and Section 545.102 is controlling. Section 545.051, by its very title, addresses driving on a particular portion of the roadway – that is, a vehicle's forward movement on a roadway - and passing other vehicles. By contrast, Section 545.102 specifically addresses making a u-turn and is in the portion of the Code regulating turning and signaling a turn. Section 545.102, by inference, allows u-turns on any two-way road, regardless of the number of lanes of travel. Section 545.051, on the other hand, makes it unlawful to make a u-turn on any two-way road, regardless of the number of lanes. As pointed out in Chief Justice Jones' dissent, no case has interpreted Section 545.051 to prohibit a driver from making a u-turn.

As previously stated, similar statutes are construed together as if they were parts of the same law and conflicts between them are harmonized, if they can be

12.

made to stand together. *Azeez v. State*, 248 S.W.3d 182, 192 (Tex. Crim. App. 2008). However, if the conflict cannot be resolved, the specific provision prevails as an exception to the general provision. TEX. GOV. CODE § 311.026. As noted, Section 545.051 regulates roadway travel in general and inferentially prohibits a driver from making a left turn, with limited exceptions, including a u-turn. Section 545.102, however, specifically allows a driver to make a u-turn with two exceptions. These provisions, therefore, cannot be harmonized. Furthermore, because Section 545.102 is specifically addressed to making a u-turn and Section 545.051 is addressed to movement on a roadway in general, Section 545.102 prevails as an exception to Section 545.051. *See* TEX. GOV. CODE § 311.026. Since there was no evidence of the two prohibitions for making a u-turn under Section 545.102 – that Appellant was approaching a curve or a crest of a grade and was not visible to an approaching vehicle within 500 feet – there was no traffic violation. Hence, the trial court erred in its determination of the applicable law and, as a result, in determining that Appellant committed a traffic violation.

Furthermore, a closer look at Section 545.051 reveals the following. Subsection "(a)" commands drivers to drive on the right half of the roadway, regardless of the number of lanes or the striping on the roadway. In other words it prohibits driving on the left side of the roadway, with four (4) exceptions. The exceptions include passing, driving around an obstruction, driving on a three-lane

13.

road, and driving on a one-way road. It would appear that any left turn is a traffic violation under this provision.

Subsection "(b)" commands slow moving drivers, regardless of the number of lanes or the striping on the roadway, to drive in the far right lane or as close to the right edge of the road. In other words, it prohibits driving on the left side of the roadway, with four exceptions. The exceptions include passing and preparing for a left turn at an intersection or into a private road or driveway. Thus, a left turn into an alley, out of a private road, out of a driveway or out of an intersecting (T-intersection) public road is a traffic violation.

Subsection "(c)" is stated inversely but, like the previous subsections, is prohibitive. It commands drivers, on a four-lane road, regardless of the striping on the roadway, not to drive left of the center line. That is to say, it, too, prohibits driving on the left side of the road, with five exceptions. The exceptions include driving in a lane left of the center pursuant to a traffic control device, driving around an obstruction, and turning left into or out of an alley, private road or driveway. Thus, a left turn into or out of an intersecting (T-intersection) public road is a traffic violation.

As previously set forth, in construing a statute, courts are to proceed on the presumption that the Legislature intended the entire statute to be effective. *See* TEX. GOV. CODE § 311.021(2). Additionally, courts should avoid construing

14.

statutes in a way that renders any part of the statute superfluous. ***Boykin v. State***, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991). The primary focus is on giving effect to the Legislature's intent as expressed by the statutory language. ***Entergy Gulf States, Inc. v. Summers***, 282 S.W3d 433, 437 (Tex. 2009). If a statute is unambiguous, the interpretation supported by its plain language is adopted, unless such an interpretation would lead to absurd results the Legislature could not possibly have intended. ***Travis County D.A. v. M.M.***, 345 S.W.3d 920, 922 (Tex. App. – Austin 2011, no pet) (citing ***Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.***, 145 S.W.3d 170, 177 (Tex. 2004)).

In the present case, limiting the interpretation to the plain language of Section 545.051 leads to absurd results. Reading the plain language of Subsection "(a)," it is a traffic violation for a driver to move from the right side of the road for any reason, other than the three exceptions stated in the subsection. Subsection "(b)" makes it an offense for a slow moving driver to turn left into an alley or a private road or driveway. Subsection "(c)" makes it an offense for a driver to turn left on to or out of an intersecting (T-intersection) public road. A u-turn under any of these provisions is prohibited under a plain language reading. These are absurd results the Legislature could not possibly have intended.

> Thus, it appears that u-turns are not per se illegal. Moreover, there are no specific, articulable facts in the record to support a finding that appellant's u-turn was illegal under the particular circumstances of

15.

this case. [The officer's] statement that the u-turn appellant performed was "illegal" is conclusory and does not, by itself, provide this Court with any means of assessing whether his opinion was objectively reasonable. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (officer's conclusory opinion that defendant was following another car too closely was unsupported by specific, articulable facts; reasonable-suspicion analysis requires objective, factual support). "[A]n officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion." *Abney*, 394 S.W.3d at 550.

*King*, mem. op. at 14-18 (Jones, C.J. dissenting).

Because the officer did not observe a traffic violation and because a review of the totality of the circumstances does not demonstrate reasonable suspicion existed to justify the officer's stop of Appellant, the Court should reverse the Third Court of Appeals and remand with instructions to grant Appellant's motion to suppress.

## III. CONCLUSION

The majority used the wrong standard of review. Although the majority correctly stated the applicable standard as a *de novo* review of the totality of the circumstances, it implemented an abuse of discretion standard in reviewing the evidence adduced at the hearing on Appellant's motion to suppress. As a result, the majority's review of the evidence was limited in view by deference to the decision of the trial court. An appropriate review of the totality of the circumstances *de novo* clearly demonstrates the record is insufficient to find the

16.

officer possessed reasonable suspicion to stop Appellant. Additionally, a review of the applicable traffic statutes demonstrates the record is insufficient to show Appellant violated any traffic laws that would provide the officer with reasonable suspicion to stop Appellant. For these reasons, the Court should reverse the opinion of the Third Court of Appeals and remand with instructions to grant Appellant's motion to suppress.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays the Court grant his Petition for Discretionary Review, grant oral argument, and, after hearing same and considering the briefs of the parties, reverse the opinion of the Third Court of Appeals and remand to the trial court with instructions to grant Appellant's motion to suppress.

Respectfully submitted,

____/S/ Kevin Fine_____
KEVIN FINE
State Bar No.: 00790682
P.O. Box 312
Boerne, Texas 78006
512-593-1383/Hill Country
713-299-1923/Houston
1-888-803-8721/efax
kfine@kevinfinelaw.com

ATTORNEY FOR APPELLANT

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Petition for Discretionary Review was provide to the Hays County District Attorney's Office, via electronic filing service, with courtesy copies provided to Christopher Johnson, chris.johnson@co.hays.tx.us, and Jennifer Stalbaum, jennifer.stalbaum@co.hays.tx.us.

SIGNED the 10th day of January, 2015.


_____/S/ Kevin Fine_____
KEVIN FINE


CERTIFICATE OF COMPLIANCE

The undersigned Counsel certifies that this Appellant's motion complies with the Tex. R. App. P. 9.4(i). Relying on the word count of the Microsoft Word program, the undersigned certifies that the total number of words contained in the motion, including footnotes is 4,423, exclusive of the cover page, Table of Contents, Index of Authorities and Appendices.

SIGNED the 10th day of January, 2015.


_____/S/ Kevin Fine_____
KEVIN FINE

# Appendix A
# Memorandum Opinion

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00021-CR

**Donald Weston King, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 101401, HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Donald Weston King was arrested for driving while intoxicated. After the trial court denied his motion to suppress evidence, King pleaded nolo contendere, and the trial court sentenced him in accordance with a plea agreement. On appeal, King challenges the denial of his motion to suppress. For the reasons that follow, we affirm.

## BACKGROUND

King was charged by information with the offense of driving while intoxicated on October 7, 2011, enhanced with one prior driving while intoxicated conviction. In the trial court, King moved to suppress evidence from the traffic stop that resulted in his detention and arrest.

The suppression hearing was held on January 29, 2013. The arresting officer who had been with the San Marcos Police Department for 15 years was the only witness to testify. He testified that he was working the midnight shift when he observed the vehicle King was driving

"failing to maintain a single lane" and make "an illegal U-turn." The vehicle "was traveling southbound on Hunter Road towards Wonder World" in San Marcos, Texas. After the officer observed the vehicle "failing to maintain a single lane," the driver of the vehicle "made a right onto Wonder World and immediately did a U-turn on Wonder World back onto Hunter to continue driving southbound on Hunter." The officer further explained the vehicle's movement through the intersection as follows:

> As soon as he made a right onto Wonder World—I guess I'll have it up to you so you can see—he made the right right there, and I believe it's a two-lane outbound and two-lane inbound, so four way—or a four lane road. He was on the right-hand side, and I guess he figured out he was going the wrong way. I don't know. He just immediately swung around to the left back into the—into the right-hand lanes and then immediately went to the right onto Hunter as well.

The officer referred to a map that he had hand drawn the morning of the hearing that depicted the intersection and King's movements through the intersection. The map was admitted as an exhibit. The officer initiated the traffic stop after the vehicle cleared the intersection. The officer explained: "I slowed behind him not knowing—thinking he was going to go straight on Wonder World, and when he immediately hit his brakes to turn left, I just kind of hung back and waited to see what he was going to do, and he continued straight on Hunter."

At the conclusion of the hearing, the State requested that the trial court take judicial notice that Wonder World was four lanes with a divided double-yellow line. After the hearing, the trial court denied the motion to suppress but did not rule on the State's request for judicial notice. No findings of fact or conclusions of law were requested or made. After the motion to suppress was

2

denied, King pleaded nolo contendere, and the trial court sentenced him in accordance with a plea agreement. This appeal, limited to the denial of the motion to suppress, followed.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 38 (Tex. Crim. App. 2010); *see also Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (stating that trial court abuses its discretion when its decision lies outside zone of reasonable disagreement). In a suppression hearing, the trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, we defer to the trial court's determination of historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but we review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, appellate courts "afford almost total deference" to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor but review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). Further, we review de novo purely legal questions. *Id.*

3

King did not request findings of fact and conclusions of law. Thus, we must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Carmouche*, 10 S.W.3d at 328)).

## DISCUSSION

In one issue, King contends that the trial court erred in finding that there was reasonable suspicion for the officer to initiate the traffic stop.[1] He urges that the trial court erred in finding that King committed a traffic violation under section 545.051(c) of the Transportation Code. *See* Tex. Transp. Code § 545.051(c). According to King, section 545.102 is the section of the Transportation Code that specifically addresses u-turns and, under that section, the u-turn that King made was not a traffic violation. *See id*. § 545.102.

An officer may initiate a traffic stop when he reasonably suspects that the driver is violating the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see also* U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion exists if the

---

[1] As an initial matter, King urges that, to the extent the trial court took judicial notice that the road in question was a four-lane road with a divided double-yellow line, it erred. *See* Tex. R. Evid. 201 (allowing judicial notice of adjudicative facts). King contends that judicial notice was improper because the condition and makeup of the road over a year prior to the hearing was not commonly known and was contested, and the trial court did not notify King that it was taking judicial notice. *See id*. R. 201(e) (entitling party to opportunity to be heard as to propriety of taking judicial notice). The record, however, does not reflect that the trial court took judicial notice of any facts. Although the State asked the trial court to take judicial notice that the road was four lanes with a divided double-yellow line, the trial court did not rule on the request.

officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent." *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013) (citing *Terry*, 392 U.S. at 21–22 and *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). The standard is "what a reasonable officer would have done with what he actually did see." *See State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013). In making the determination of whether reasonable suspicion existed, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

Because the only evidence presented at the hearing was the testimony of the arresting officer and his hand-drawn map of the intersection, the trial court was presented with a mixed question of law and fact wherein the resolution turned on an evaluation of the credibility and demeanor of the arresting officer. *See Ross*, 32 S.W.3d at 856. Therefore, we give almost total deference to the trial court's ruling that reasonable suspicion existed. *See id.*; *see also Johnson*, 336 S.W.3d at 657.

To support his position that the trial court erred by denying his motion to suppress, King focuses on the officer's testimony that he "believe[d]" the road was four lanes. King contends that the officer's belief that the road was four lanes conflicted with the officer's hand-drawn map, and the officer's belief over a year after an incident is insufficient to establish the existence of

5

reasonable suspicion to initiate a traffic stop or to support a finding of a traffic violation under section 545.051(c) of the Transportation Code. *See* Tex. Transp. Code § 545.051(c). King urges that the officer's hand-drawn map contradicted the officer's testimony that the road was four lanes because the map depicts the road as two lanes.

Viewing the evidence in the light most favorable to the trial court's ruling, however, the trial court could have found that the hand-drawn map showed directions of travel, not number of lanes, and that the map, therefore, was not inconsistent with the officer's testimony. *See Wiede*, 214 S.W.3d at 25. Further, we must assume that the trial court found the officer's testimony credible. *See St. George*, 237 S.W.3d at 725 (noting that trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony"); *Wiede*, 214 S.W.3d at 25 (noting that appellate court must view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record).

King also focuses on the particular provision of the Transportation Code alleged to have been violated. He urges that the more specific section 545.102 of the Transportation Code, addressing "Turning on Curve or Crest of Grade," controls over section 545.051(c). *See* Tex. Transp. Code §§ 545.051(c), .102. For purposes of this appeal, section 545.102 prohibits u-turns in specified situations, *id.* § 545.102, and section 545.051(c) provides that "[a]n operator on a roadway having four or more lanes for moving vehicles and providing for two-way movement of vehicles may not drive left of the center line of the roadway." *See id*. § 545.051(c).

6

The State did not argue to the trial court and does not assert on appeal that King violated section 545.102, but that the trial court could have denied the motion to suppress based on a finding that either: (i) King violated section 545.051 by not staying to the right of the roadway, or (ii) the officer had reasonable suspicion to stop the vehicle under a totality of the circumstances even absent a traffic violation. *See Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014) (noting that it is "not necessary that the reasonable suspicion relate to a specific criminal offense"); *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (explaining that "State does not have to establish with absolute certainty that a crime occurred; it just has to carry its burden of proving that, under the totality of the circumstances, the seizure was reasonable"); *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (noting that it is "not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction"); *Curtis v. State*, 238 S.W.3d 376, 379–80 (Tex. Crim. App. 2007) (finding that court of appeals failed to consider "rational inference" from "car weaving in and out of his lane several times, over short distance, late at night" in its determination of whether there was justification for detention); *Arroyo v. State*, No. 01-10-00136-CR, 2011 Tex. App. LEXIS 679, at *10–12 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (collecting cases in which courts considered, among other facts, time of day and weaving in determination of whether there was reasonable suspicion of driving while intoxicated based on totality of circumstances).

Here, in addition to the officer's testimony about the vehicle's movement through the intersection, the officer also observed the vehicle "failing to maintain a single lane" before it reached the intersection, the traffic stop occurred after midnight, and the officer had 15 years of

7

experience. Viewing this evidence in the light most favorable to the trial court's ruling and assuming that the trial court made implicit findings of fact based on rational inferences from this evidence, we agree with the State that the record supports a finding of reasonable suspicion. *See Guerra*, 432 S.W.3d at 911; *Neal*, 256 S.W.3d at 280. Thus, considering the totality of the circumstances, we cannot conclude that the trial court erred when it denied the motion to suppress. *See Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

## CONCLUSION

For this reason, we overrule King's issue and affirm.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin
   Dissenting Opinion by Chief Justice Jones

Affirmed

Filed:  November 14, 2014

Do Not Publish

8

# Appendix B
# Dissenting Opinion

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00021-CR

Donald Weston King, Appellant

v.

The State of Texas, Appellee

FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
NO. 101401, HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING

## DISSENTING OPINION

Because I believe that the police officer who arrested appellant lacked reasonable suspicion for the initial traffic stop, I would reverse the judgment of conviction and remand this case to the trial court. Accordingly, I respectfully dissent from the majority's affirmance of the conviction.

At the suppression hearing, the trial court heard testimony from a single witness, Corporal Tommy Villanueva of the San Marcos Police Department. The only issue before the court was whether the officer had reasonable suspicion to make the initial traffic stop. While working patrol on the midnight shift, Villanueva said that he observed appellant failing to maintain his vehicle in a single lane, but he could not recall the number of times that occurred. He was not asked whether any other vehicles were in the area. There was also no evidence or testimony about the extent of any deviation from the lane of travel or whether appellant had crossed the center or

shoulder lines. Villanueva observed appellant make a right hand turn at an intersection and then "immediately" make a u-turn and then another turn in order to return to his original route. Villanueva did not recall whether any other vehicles were in the area or whether appellant had used a turn signal, but he stated that he did not note in the offense report that the driver had failed to signal a lane change.

Shortly after appellant had resumed travel on his original route, Villanueva initiated a traffic stop. Although the stop ultimately resulted in appellant's arrest for DWI, Villanueva testified that the only reasons for the stop were that appellant failed to maintain a single lane and had made an "illegal" u-turn. Villanueva was not asked, nor did he offer any testimony, about whether appellant's vehicle was being driven in an unsafe manner or whether he suspected that the driver of the vehicle was intoxicated. There was also no testimony about the road conditions, visibility, or any other matter related to whether appellant was driving unsafely or recklessly, including his speed of travel and weather conditions. Villanueva was not questioned about the layout of the roadways on the drawing that was admitted into evidence, but he stated that he believed the u-turn occurred on a four-lane road.

In the trial court, the State conceded that there was insufficient evidence that Villanueva had reasonable suspicion to stop appellant's vehicle based on his failure to maintain a single lane. *See* Tex. Transp. Code § 545.060 (requiring operator to "drive nearly as practical entirely within a single lane" unless movement from lane "can be made safely"). The State asserted, however, that the u-turn was illegal because appellant must have crossed a double yellow line to make the u-turn. Although there was no evidence that either road was separated by two solid yellow

2

lines—and at least some evidence to the contrary—the State asked the trial court to take judicial

notice that the u-turn occurred on a four-lane road that necessarily would have been divided by two

solid yellow lines "under state law." At the conclusion of the hearing, the trial court took the matter

under advisement and subsequently issued an order denying the motion to suppress. No findings of

fact and conclusions of law were requested or made, and the trial court never ruled on the request

to take judicial notice.[1] After appellant's motion to suppress was denied, he pleaded no contest to

driving while intoxicated and was sentenced pursuant to a plea agreement.

On appeal, appellant asserts that the record does not support the trial court's implied

finding that there was reasonable suspicion for the officer to initiate a traffic stop. The State

contends that appellant's u-turn was illegal as a matter of law under section 545.051 of the Texas

Transportation Code. In the alternative, the State contends the stop was justified under the totality

of the circumstances.

A violation of the Texas Transportation Code provides a police officer with probable

cause to stop and seize a driver. *State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005). An

officer may initiate a traffic stop if he reasonably suspects that the driver has violated the law. *See*

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "[R]easonable suspicion requires 'that

there is something out of the ordinary occurring *and some indication that the unusual activity is*

*related to crime*.'" *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Viveros*

---

[1] As the State concedes, if the trial court had ruled on the request for judicial notice without
prior notification, appellant would have been entitled to request an opportunity to be heard after
judicial notice had been taken. *See* Tex. R. Evid. 201. In any event, the State has abandoned the
contention that appellant's u-turn was illegal because it occurred on a four-lane road separated by
two solid yellow lines.

*v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)) (emphasis added).  Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity.  *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  "This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists."  *Ford*, 158 S.W.3d at 492.

The first basis for the stop asserted by the State is that appellant violated the law by making a u-turn.  The only Texas statute that specifically addresses the legality of u-turns is section 545.102 of the Texas Transportation Code, which prohibits a driver from moving a vehicle "in the opposite direction when approaching a curve or the crest of a grade if the vehicle is not visible to the operator of another vehicle approaching from either direction within 500 feet."  Tex. Transp. Code § 545.102.  There is no evidence that appellant's u-turn occurred under such circumstances.  There is also no evidence that appellant made the u-turn unsafely or recklessly, in derogation of posted traffic signs, without proper signaling, over a median, in a no-passing zone, without yielding to opposing traffic, from the right-hand lane of a four-lane divided highway, or in any other manner suggestive of illegal activity.

The State contends, however, that appellant's turn was per se illegal under section 545.051 of the Transportation Code.  Section 545.051, which governs driving on the right side of the roadway, provides:

(a) An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:
  (1) the operator is passing another vehicle;
  (2) an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields the right-of-way to a vehicle that:
      (A) is moving in the proper direction on the unobstructed portion of the roadway; and
      (B) is an immediate hazard;
  (3) the operator is on a roadway divided into three marked lanes for traffic; or
  (4) the operator is on a roadway restricted to one-way traffic.

(b) An operator of a vehicle on a roadway moving more slowly than the normal speed of other vehicles at the time and place under the existing conditions shall drive in the right-hand lane available for vehicles, or as close as practicable to the right-hand curb or edge of the roadway, unless the operator is:
  (1) passing another vehicle; or
  (2) preparing for a left turn at an intersection or into a private road or driveway.

(c) An operator on a roadway having four or more lanes for moving vehicles and providing for two-way movement of vehicles may not drive left of the center line of the roadway except:
  (1) as authorized by an official traffic-control device designating a specified lane to the left side of the center of the roadway for use by a vehicle not otherwise permitted to use the lane;
  (2) under the conditions described by Subsection (a)(2); or
  (3) in crossing the center line to make a left turn into or out of an alley, private road, or driveway.

*Id.* § 545.051. The State asserts that appellant was not permitted to make the u-turn because, by turning, he necessarily drove left of the center line in violation of section 545.051 and there is no evidence that any of the statutory exceptions apply. According to the State, left turns (and therefore all u-turns) are generally proscribed by the Code except as permitted by the exceptions in section 545.051 and other provisions of the Code that regulate the execution of turns. *See id.* §§ 545.101

(turning at intersection), .102 (turning in opposite direction on curve or crest of grade), .103 (generally prohibiting turning unless movement can be made safely), .152 (yielding when turning left at intersection or into alley, private road, or driveway), .155 (yielding when entering or crossing highway from alley, building, private road, or driveway).

Section 545.051 does not expressly prohibit u-turns, and it has never been so construed. Moreover, construing section 545.051 to generally prohibit u-turns would render section 545.102 redundant and meaningless. *See In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007) (noting that courts "should avoid, when possible, treating statutory language as surplusage"); *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied) ("We will avoid a construction that creates a redundancy or renders a provision meaningless."). A provision prohibiting u-turns under the specific circumstances stated in section 545.102 would be mere surplusage if u-turns were categorically prohibited by section 545.051.

Thus, it appears that u-turns are not per se illegal. Moreover, there are no specific, articulable facts in the record to support a finding that appellant's u-turn was illegal under the particular circumstances of this case.[2] Villanueva's statement that the u-turn appellant performed was "illegal" is conclusory and does not, by itself, provide this Court with any means of assessing whether his opinion was objectively reasonable. *See Ford*, 158 S.W.3d at 493 (officer's conclusory opinion that defendant was following another car too closely was unsupported by specific, articulable

---

[2]  There is some evidence that Wonder World Drive is a four-lane road, but there is no evidence it was divided by a solid single or double line, nor have I found any statute or regulation that requires such. If there were evidence that appellant had crossed over a double yellow line to make his u-turn, I agree that would have given Villanueva reasonable suspicion to make the stop. *See Boggus v. Miller*, 388 S.W.2d 240, 242 (Tex. Civ. App.—Fort Worth 1965, writ ref'd n.r.e.).

6

facts; reasonable-suspicion analysis requires objective, factual support). "[A]n officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion." *Abney v. State*, 394 S.W.3d 542, 550 (Tex. Crim. App. 2013).

Nonetheless, the State contends that, without regard to the illegality of the individual vehicular movements, the stop was objectively justifiable based on the totality of the circumstances. At the suppression hearing, Villanueva testified that the only reason he stopped appellant was because he believed appellant had committed two specific traffic offenses:

> Q: And besides the two traffic violations that you state in your offense report, which would be the failure to maintain the single lane and the illegal U-turn, were there any other reasons for the stop?
>
> A. At that point, no.

The State has conceded insufficiency of the evidence as to the first alleged offense, and I believe the evidence is likewise insufficient to sustain the stop as to the second. Even including the two alleged traffic violations, Villanueva's "specific articulable facts" are not only meager but confusing: (1) he observed the vehicle failing to maintain a single lane; (2) he observed the driver make a right-hand turn and then "immediately [swing] around to the left back into the – into the right-hand lanes"; and (3) he thought the vehicle would maintain the new direction of travel, but the driver "immediately started hitting his brakes to turn left" to return him to his original route of travel.[3] The majority relies on these circumstances, along with evidence that Villanueva is a 15-year law-enforcement veteran who was working a midnight shift, to support the reasonable-suspicion finding. None of the facts

---

[3] Villanueva testified that appellant made a *left* turn to return to his original route, but the drawing he provided depicts a *right* turn. A right turn is consistent with the officer's testimony that appellant returned to his original course of travel after making the u-turn.

7

are contested. Accordingly, there is no issue as to Villanueva's credibility, meaning that we review the trial court's decision de novo. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013) ("'[W]hen mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling *de novo*.'").

I cannot conclude that the "totality of the circumstances" shown here rendered the stop objectively reasonable. There is no evidence or testimony that appellant's actions were indicative of driving while intoxicated, nor did Villanueva testify that he had any such suspicion. In essence, the totality of what Villanueva observed was nothing more than the vaguely described failure to maintain a single lane and the u-turn. As discussed above, Villanueva's conclusory statement that appellant made an "illegal" u-turn, without underlying facts, constitutes no evidence of current or threatened illegality. *See Ford*, 158 S.W.3d at 493. Moreover, not only is a u-turn not illegal, it is not at all unusual. Drivers make u-turns all the time.

As to appellant's alleged failure to maintain a single lane, Villanueva testified that he could not remember how many times this happened and gave no details about it. Could the trial court "infer" from this testimony that it happened three or four times? Or even twice? Of course not. That would be rank speculation. Inferences must be reasonable and based on facts in evidence. Could the trial court "infer" that appellant's vehicle drifted into the adjacent lane by a significant amount, perhaps half the car's width? Of course not. There would be no reasonable basis for such an inference. Without resorting to pure speculation, all that can be reasonably be inferred from the officer's testimony is that appellant's car drifted a few inches across the lane divider a single time. There are simply not enough background facts to warrant any other inference.

8

"'At a minimum, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstance as to clearly, if not conclusively, set the suspect apart from them.'" *Id.* (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). "[A]rticulable facts must amount to more than a mere hunch or suspicion." *Abney*, 394 S.W.3d at 548. And Villanueva's special training and experience are not sufficient to establish reasonable suspicion in the absence of "objective factual support." *See Ford*, 158 S.W.3d at 494. Measured using an objective standard, the "totality of the circumstances" here (drifting slightly over a lane divider a single time and making a safe and legal u-turn) do not support the conclusion that there existed a reasonable suspicion that appellant was driving while intoxicated or had engaged in or was about to engage in illegal activity.

Thus, the State failed to elicit testimony that would *objectively* permit the conclusion that appellant was violating or about to violate a traffic law or any other law. Viewing the evidence in the light most favorable to the trial court's ruling, i.e., taking all of Villanueva's testimony about the underlying facts as true, the record does not support a finding of reasonable suspicion when the *law* is applied to those facts. Because the record fails to reveal an objective basis and any articulable facts to support the initial stop of appellant's vehicle, I would hold that the trial court erred in denying appellant's motion to suppress.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Filed:   November 14, 2014

# Appendix C
## Order Denying
## Motion for *En Banc* Reconsideration

FILE COPY



# COURT OF APPEALS

### THIRD DISTRICT OF TEXAS
P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
www.txcourts.gov/3rdcoa.aspx
(512) 463-1733

J. WOODFIN JONES, CHIEF JUSTICE                    JEFFREY D. KYLE, CLERK
DAVID PURYEAR, JUSTICE
BOB PEMBERTON, JUSTICE
JEFF L. ROSE, JUSTICE
MELISSA GOODWIN, JUSTICE
SCOTT K. FIELD, JUSTICE

December 11, 2014

Mr. Kevin Fine                          Ms. Jennifer Stalbaum
The Law Office of Kevin Fine           Assistant Criminal District Attorney
6243 West I-10, Suite 1010             712 South Stagecoach Trail, Ste. 2057
San Antonio, TX 78201                  San Marcos, TX 78666
* DELIVERED VIA E-MAIL *               * DELIVERED VIA E-MAIL *


RE:     Court of Appeals Number:    03-14-00021-CR
        Trial Court Case Number:    101401

Style:  Donald Weston King
           v. The State of Texas


Dear Counsel:

        Appellant's motion for *en banc* reconsideration was overruled by this Court on the date
noted above.


                          Very truly yours,

                          JEFFREY D. KYLE, CLERK



                          BY: *E. Talerico*
                              Liz Talerico, Deputy Clerk